Sharon Wise,                                          :
                          Appellant              :
                                                     :
            v.                                       :
                                                     :
                                                     :
Huntingdon County Housing                        :
Development Corporation, Housing             :
Authority of the County of Huntingdon,       :
Chestnut Terrace Resident's Association      :
and Weatherization Inc., a Non Profit        :
Corporation d/b/a Huntingdon County          :        No. 1387 C.D. 2018
Housing Services                             :        Argued: May 7, 2019

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                              FILED:  June 12, 2019


            Sharon Wise (Wise) appeals from the Huntingdon County Common Pleas Court's (trial court) February 10, 2017 order granting the Housing Authority of the County of Huntingdon's (HACH) Summary Judgment Motion (Motion) and dismissing Wise's Complaint. Wise raises two issues for this Court's review: (1) whether the trial court erred by holding that the real estate exception to what is commonly referred to as the Sovereign Immunity Act (Act)[1] did not apply to Wise's

---

[1] 42 Pa.C.S. §§ 8521-8527. "Pursuant to the Act, the Commonwealth generally enjoys immunity from suit for damages in negligence except under certain circumstances set forth therein. *See* 42 Pa.C.S. §§ 8521-8522." *Cagey v. Commonwealth*, 179 A.3d 458, 460 (Pa. 2018). Section 8522 of the Act provides, in pertinent part:

>            (a) Liability imposed.--The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in [S]ection

claim that HACH was negligent by failing to provide adequate outdoor lighting; and (2) whether there exists a genuine issue of material fact as to the adequacy of the outdoor lighting.

On March 9, 2015, Wise filed the Complaint in the trial court, alleging that she fell at approximately 12:10 a.m. on May 9, 2013, while walking on a sidewalk in the Chestnut Terrace public housing complex (Chestnut Terrace) HACH owned.[2]  Wise, a Chestnut Terrace resident, was returning home with her sister after visiting another resident when she fell.  Although Wise alleges in her Complaint that "insufficient lighting and demarcation of the . . . sidewalk, and/or along with a defect within the sidewalk itself caused her to trip and fall, resulting in serious injuries[,]"

---

8528 [of the Judicial Code] (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

(b) Acts which may impose liability.--The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(4) Commonwealth real estate, highways and sidewalks.--**A dangerous condition of Commonwealth agency real estate and sidewalks**, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [(relating to potholes and other dangerous conditions)].

42 Pa.C.S. § 8522 (emphasis added).

[2] Wise filed her complaint against four defendants: (1) Huntingdon County Housing Development Corporation (Housing Corporation); (2) HACH; (3) Chestnut Terrace Resident's Association; and (4) Weatherization, Inc., a non-profit corporation d/b/a Huntingdon County Housing Services (Weatherization).

2

Wise admitted in a deposition that she did not see any defect of the sidewalk where she fell. Reproduced Record (R.R.) at 10a. In a letter to HACH's counsel, Wise's attorney described the incident as follows:

> [T]his accident took place near midnight, and the outside lighting at the housing development was poor, if not non-existent. While my client attempted to stay on the sidewalk that night to get to her car[,] she simply could not see to delineate the sidewalk from the ground, hit the edge of the sidewalk with her foot and rolled her ankle causing the fracture. Hence, the 'defect' so to speak with [sic] not with the sidewalk itself, but the inadequate outdoor lighting.

R.R. at 89a. Similarly, in her brief to this Court, Wise acknowledges that "[she] testified that the area was dark, and her inability to see where she was going caused her to fall." Wise Br. at 5. According to Wise, light from an outdoor pole light located a "significant distance" from where she fell was the only light source, and the light was obstructed by a large tree. Wise Br. at 5. As a result, Wise contends she could not see the edge of the sidewalk.

On October 17, 2016, HACH filed the Motion, wherein it asserted that Wise's action was barred by the Act and governmental immunity. On February 10, 2017, the trial court granted the Motion, dismissed the action and entered judgment in HACH's favor.[3] Wise appealed from the trial court's dismissal to the Pennsylvania Superior Court, which transferred the action to this Court. The trial court filed its

---

[3] The trial court's February 10, 2017 order stated: "[U]pon consideration of the Motion for Summary Judgment, it is hereby ORDERED, ADJUDGED and DECREED that said Motion is GRANTED. Judgment is hereby entered in favor of [HACH] and against [Wise] and this case is DISMISSED." Notably, the trial court entered judgment in favor of only HACH against Wise and not the other defendants. Wise filed a Praecipe to Discontinue Action in the trial court, withdrawing with prejudice all claims against the Housing Corporation, Chestnut Terrace Resident's Association and Weatherization.

3

memorandum opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (1925(a) Opinion) on April 21, 2017.[4]

Wise argues that the trial court erred when it granted the Motion and concluded that the Act shields HACH from liability for Wise's negligence claims.

Initially,

[s]ummary judgment will be entered only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law. Summary judgment is proper in cases in which 'an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to a cause of action or defense in which a jury trial would require the issues be submitted to a jury.' [Pennsylvania Rule of Civil Procedure No.] 1035.2(2). We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 438 (Pa. 2001) (citations omitted).

This Court has explained:

Commonwealth agencies are generally immune from civil suit for tort liabilities unless the General Assembly waives sovereign immunity. *See* 1 Pa.C.S. § 2310; [] 42 Pa.C.S. § 8521. Section 8522(a) of the [Act], 42 Pa.C.S. § 8522(a), . . . authorizes the imposition of liability against Commonwealth agencies for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were [sic] caused by a person to whom the defense of sovereign immunity is not available. To meet the threshold requirement under Section 8522(a) of the [Act], a plaintiff must prove the requisite elements of

---

[4] "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 438 (Pa. 2001) (citation omitted).

4

negligence: (1) the defendant's duty[5] or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Talarico v. Bonham*, . . . 650 A.2d 1192 ([Pa. Cmwlth.] 1994).

**Even if the plaintiff can establish a *prima facie* case for negligence, a Commonwealth agency will not be liable unless the breach of its duty coincides with an exception to Section 8522(a) of the** [**Act**]. *Bendas v. Twp. of White Deer*, . . . 611 A.2d 1184, 1186 ([Pa.] 1992). To defeat the defense of sovereign immunity, the plaintiff must also establish that his or her allegations fall within one of the nine enumerated exceptions to sovereign immunity set forth in Section 8522(b) of the [Act]. *Dean v. Dep't of Transp.*, . . . 751 A.2d 1130, 1132 ([Pa.] 2000). Because of our General Assembly's clear intent to insulate government from exposure to tort liability, courts must strictly construe the exceptions to sovereign immunity. *Id.* A dangerous condition of Commonwealth agency real estate and sidewalks, including, but not limited to, highways under the jurisdiction of a Commonwealth agency [(*i.e.*, real estate exception)], is one of the specifically enumerated circumstances for which our General Assembly has waived sovereign immunity.

*Manning v. Dep't of Transp.*, 144 A.3d 252, 256 (Pa. Cmwlth. 2016) (emphasis added). Further, "the question of what constitutes a dangerous condition is one of fact[.]" *Bendas*, 611 A.2d at 1186-87.

The Pennsylvania Supreme Court clarified the application of the real property exception in *Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989) in the context of whether the absence of lighting constituted an artificial condition or a defect of the land itself. In *Snyder*, a driver stopped along the berm of a road. The driver and passengers were unaware that a strip mine was located directly adjacent to the berm.

---

[5] "The corresponding duty of care a Commonwealth agency owes to those using its real estate, is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989).

5

Several passengers left the vehicle, climbed an embankment located outside the right-of-way and fell into the strip mine. One passenger died, and three others were severely injured. Three of the passengers sued the Pennsylvania Department of Transportation (DOT) and the Pennsylvania Department of Environmental Resources (DER) (now the Department of Environmental Protection), alleging, *inter alia*, that DOT and DER had failed to warn the public of the strip mine either by lighting the area, or by erecting a barrier along the right-of-way. The common pleas court granted summary judgment because sovereign immunity barred the action. This Court reversed on appeal, concluding that the plaintiffs had pled facts sufficient to establish a dangerous condition. On appeal, the Pennsylvania Supreme Court considered the term "**dangerous condition of Commonwealth agency real estate**," 42 Pa.C.S. § 8522(b)(4), and reasoned: "These key words indicate that a dangerous condition **must derive, originate from or have as its source the Commonwealth realty**." *Snyder*, 562 A.2d at 311 (emphasis added). The Court held:

> The [plaintiffs] . . . assert that the close proximity between [the highway] and the deep chasm, and the unlit and deceptive appearance of the shoulder of the road presented an inherently dangerous condition. Thus, liability is not predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property which the Commonwealth knows or should reasonably know and takes no action to prevent any harm from occurring. While this theory appears attractive, it is not supported by any exception to our immunity statute.
>
> It is uncontroverted that the strip mine highwall, at the points where the appellees fell, was some distance from the edge of [DOT's] right-of-way. Furthermore, **the absence of lighting so as to create a deceptive appearance of the shoulder of the road cannot be said to be either an artificial condition or a defect of the land itself**. Accordingly, we conclude that Section 8522(b)(4) [of the Act] is inapplicable to this cause of action.

6

*Snyder*, 562 A.2d at 312-13 (emphasis added); *see also Dean*.

In *Jones*, the Pennsylvania Supreme Court considered whether rock salt on a train platform constituted a defect of real property within the real property exception. The *Jones* Court held:

> [G]uided by *Snyder*, we conclude that **a claim for damages for injuries caused by a substance or an object on Commonwealth real estate must allege that the dangerous condition 'derive[d], originate[d] or ha[d] as its source the Commonwealth realty' itself**, if it is to fall within the [Act's] real estate exception. *Snyder*, 562 A.2d at 311[, 311] n.5. In other words, assuming all other requirements of the [real estate] exception . . . are met, the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair or design.

*Jones*, 772 A.2d at 443-44 (emphasis added).

More recently, in *Cagey v. Commonwealth*, 179 A.3d 458 (Pa. 2018), the Pennsylvania Supreme Court further clarified the real estate exception in the context of an alleged defectively-designed and dangerous guardrail installed adjacent to a highway, stating:

> [I]n order for liability to be imposed on [DOT], three statutory requirements must be met. First, the injury must have resulted from a 'dangerous condition.' [42 Pa.C.S. § 8522(a)], § 8522(b)(4). Second, the dangerous condition must be a condition 'of Commonwealth agency real estate.' *Id*. Third, the damages must be recoverable under common law 'if the injury were [sic] caused by a person not having available the defense of sovereign immunity.' [42 Pa.C.S.] § 8522(a).

*Cagey*, 179 A.3d at 463. Regarding the first factor, the Court explained that "[t]he term 'dangerous condition' is unambiguous and plainly encompasses any condition that presents a danger. The [plaintiffs] averred that the guardrail causing their

7

injuries was a 'dangerous condition' in that it was defective, negligently-installed and uncrashworthy." *Cagey*, 179 A.3d at 464 (citation omitted). With respect to the second factor, the *Cagey* Court held that because the guardrails were physically attached to Commonwealth property, they were fixtures and part of the realty. The Court stated:

> Because the guardrail at issue was affixed to Commonwealth real estate, making it legally indistinguishable from the land upon which it was erected, the [plaintiffs] sufficiently alleged that the dangerous condition (the negligently installed 'boxing glove'-style guardrail) was a condition 'of Commonwealth agency real estate.' 42 Pa.C.S. § 8522(b)(4); *see also* [*Snyder*], . . . 562 A.2d [at] 311-13 . . . (explaining that the 'unambiguous language' of [S]ection 8522(b)(4) [of the Act] indicates that the dangerous condition must be an 'artificial condition or a defect of the land itself' and 'must derive, originate from or have as its source the Commonwealth realty'); [*Jones*], 772 A.2d [at] 443-44 . . . (holding that salt scattered upon a [Southeastern Pennsylvania Transportation Authority (]SEPTA[)] train platform was not a dangerous condition 'of Commonwealth agency real estate' because the 'substance or object' on Commonwealth real estate was not alleged to be 'the result of a defect in the property or in its construction, maintenance, repair or design').

*Cagey*, 179 A.3d at 465 (footnote omitted). The *Cagey* Court also concluded that the plaintiffs satisfied the third factor, stating:

> [A]t common law, a possessor of land is liable for harm caused by a dangerous condition that he would have discovered through the exercise of reasonable care. The [plaintiffs] alleged in their complaint that [DOT] negligently failed to 'inspect, detect and correct the uncrashworthy blunt end and/or 'boxing glove' terminal end treatment on the [guardrail].' [Plaintiffs]' Complaint at 5. This allegation satisfies the foregoing common law requirement. Moreover, the defective guardrail is not the kind of obvious condition a possessor of land should expect an invitee to discover independently. To the contrary, an invitee on Commonwealth real estate would expect a

8

guardrail alongside the road to prevent or minimize harm, not to 'spear' her and cause 'significantly more severe injuries.' [Plaintiffs]' Complaint at 5. The averments of fact set forth in the [Plaintiffs]' complaint meet the requirement of [S]ection 8522(a) [of the Act].

*Cagey*, 179 A.3d at 466 (citations omitted). Consequently, the Court found that the allegations fell within the real estate exception to sovereign immunity.

In contrast, in *Donnelly v. Southeastern Pennsylvania Transportation Authority*, 708 A.2d 145 (Pa. Cmwlth. 1998), Donnelly, a painter/sandblaster was injured when he allegedly tripped over equipment and fell from a scaffold to the street below. Donnelly and his wife filed an action against SEPTA, wherein Donnelly alleged that he was unable to see the equipment because the Philadelphia Electric Company (PECO) had disconnected electrical lighting attached to the understructure of overhead rail lines used to illuminate streets, to prevent workers' electrocution. Donnelly averred that SEPTA was negligent in failing to provide adequate lighting, and ensuring that the scaffold and jobsite were safe. SEPTA moved for summary judgment based on sovereign immunity. The trial court denied the summary judgment motion, but permitted SEPTA to file an interlocutory appeal to this Court. On review, this Court first concluded that Donnelly could not establish a common law cause of action against SEPTA. Further, this Court concluded that the Act's real estate exception did not apply:

> Liability under the real estate exception depends, first, on the legal determination that an injury was caused by a condition *of government realty itself*, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous. Thus, to pierce SEPTA's immunity, there must be a dangerous defect *of* SEPTA's realty.

> The [plaintiffs] argue that the understructure overhead lighting, disconnected under SEPTA's authority to prevent electrocution, is the defective realty which brings this case within the real estate exception. The [plaintiffs] claim that

9

> the unsafe scaffold coupled with the inadequate lighting caused Donnelly's fall. However, our courts have held **a scaffold is personalty, not realty, for purposes of immunity**, *Maloney v. City of Phila*[.], . . . 535 A.2d 209 ([Pa. Cmwlth.] 1987), . . . **and** that **the absence of lighting cannot be considered a defect of land itself**. *Snyder* . . . . Because Donnelly was not harmed by a defect of SEPTA's real estate, [Section] 8522(b)(4) [of the Act] is inapplicable to this cause of action.

*Donnelly*, 708 A.2d at 149-50 (citation and footnote omitted; bold and underline emphasis added).

Wise contends the trial court erred by ruling that sovereign immunity barred her claim because whether inadequate outdoor lighting constitutes a dangerous condition of Commonwealth property is a question for the fact finder. Wise relies on *Peterson v. Philadelphia Housing Authority*, 623 A.2d 904 (Pa. Cmwlth. 1993), and *Floyd v. Philadelphia Housing Authority*, 623 A.2d 901 (Pa. Cmwlth. 1993).

In *Peterson*, the plaintiff was severely injured when he slipped on debris in a Philadelphia Housing Authority (PHA) building stairwell, attempted to grab a missing bannister and fell down a flight of stairs. The plaintiff filed a complaint alleging that the PHA had negligently failed to maintain the stairs and illuminate the property. The trial court granted summary judgment, concluding that the real property exception to sovereign immunity did not apply because the bannister was not a fixture.

On appeal, the plaintiff asserted that the trial court erred because "both the bannister and the stairwell lighting system constitute 'fixtures,' and are, therefore, real property." *Id*. at 906. This Court explained:

> [The plaintiff] relies upon the real property exception and bases his claim upon the [PHA's] failure to maintain the bannister and properly illuminate the stairs. [The plaintiff] contends that both the bannister and the stairwell lighting system constitute 'fixtures,' and are, therefore, real property.

10

In *Gore v. Bethlehem Area School District*, . . . 537 A.2d 913 [(Pa. Cmwlth. 1988)] . . . , we noted (citing Black's Law Dictionary 574 (5th [e]d. 1979)) that a 'fixture' is an article in the nature of personal property that has been so annexed to the realty that it is regarded as part and parcel of the land. *Id.* at . . . 915. The factors that determine whether a chattel is a fixture when affixed to the land include (a) the manner in which it is physically attached or installed; (b) the extent to which it is essential to the permanent use of the building or other improvement; and (c) the intention of the parties who attached or installed it. [*McCloskey v. Abington Sch. Dist.*, 515 A.2d 642, 644 (Pa. Cmwlth. 1986)[6]]. In *McCloskey* . . . , we also noted that the third factor, **the intended use of the property by the parties, is a matter for the fact finder rather than something that can be decided as a matter of law by this Court**. *Id.* . . . at 645. We realize that it can hardly be argued that a stairwell bannister and stairwell lighting system are not physically integrated and installed as parts of the building or not essential to the permanent use of the building. Nevertheless, the intended use of the property by the parties is a question for the trier of fact and **the trial court erred in ruling, as a matter of law, that the bannister and stairwell lighting system are not fixtures, and thus not real property as contemplated by the real property exception**.

In summary, we conclude that the questions of: (1) whether the missing bannister constitutes a defect in the real property itself and is therefore a dangerous condition of the [PHA's] real estate as contemplated by [Section] 8522(b)(4) [of the Act][;] and (2), whether the inadequate stairwell lighting constitutes a defect in the real property and is therefore a dangerous condition of the [PHA's] real estate as contemplated by [Section] 8522(b)(4) [of the Act], are expressly questions of fact to be determined by the trier of fact.

*Peterson*, 623 A.2d at 906 (emphasis added, footnote omitted). In *Peterson*, the

questions for the fact finder were whether the missing bannister and stairwell lighting

---

[6] *McCloskey* was vacated on other grounds. *See McCloskey v. Abington Sch. Dist.*, 537 A.2d 329 (Pa. 1988).

systems were fixtures, such that their defective condition constituted defects of Commonwealth real property.

In *Floyd*, a factually similar case to *Peterson*, an eleven-year-old girl was injured when she tripped and fell over debris in an unlit stairwell on the PHA's property. The plaintiffs alleged that the injuries resulted from the PHA's failure to maintain and properly illuminate the stairwell. Specifically, the plaintiffs "contend[ed] that the abandoned lighting system in the stairwell constitute[d] a defect in the real property itself and thus a dangerous condition of the [PHA's] real estate." *Floyd*, 623 A.2d at 903. Relying on *Peterson*, the *Floyd* Court explained:

> **This inquiry involves the intent of the [PHA] when the lighting system was installed, specifically, whether it was intended to become a 'fixture.'** *Peterson*, . . . 623 A.2d at 906-[]07. As in *Peterson*, we hold that the trial court in the present case also erred in ruling as a matter of law that the inadequate lighting in the stairwell is not a defect in the [PHA's] real property.

*Floyd*, 623 A.2d at 903 (emphasis added). The *Floyd* Court also rejected the PHA's reliance on *Snyder*, stating:

> The [PHA] also cites *Snyder* . . . for the proposition that the absence of artificial lighting constitutes neither a defect of the land itself nor an artificial condition. The [PHA's] position is untenable. In *Snyder*[,] several people were injured when they fell off a highwall and into a mining pit located approximately twelve feet from a Commonwealth highway. Because the highwall was some distance from the edge of the Commonwealth right-of-way, the Supreme Court held that the absence of lighting on the Commonwealth property was neither an artificial condition of nor defect in the land itself. However, in the present case, the absence of lighting in the fire stairwell *is* clearly on the [PHA's] property, and the rationale in *Snyder* is not applicable.

*Floyd*, 623 A.2d at 903 (citation omitted). Accordingly, as in *Peterson*, the question for the fact finder in *Floyd* was whether the stairwell's inoperable, abandoned

lighting system was a fixture such that its defective condition was a defect of Commonwealth realty.

In the instant matter, the trial court concluded that *Peterson* and *Floyd* were inapposite, explaining:

> Both cases . . . miss the mark. [Wise] attempts to broaden the holdings of those cases to encompass all types of lighting, even outside lighting. For the real estate exception to apply, the defect must derive, originate, or have its source as the Commonwealth realty itself. [*Jones*], 772 A.2d [at] 443 . . . (citation omitted). There was no defect in the sidewalk in the case at bar. Plaintiff seeks to expand the real estate exception to encompass lighting, and we are not inclined to do so.

Trial Ct. 1925(a) Op. at 2.

Wise contends that the trial court erroneously created a distinction between inside and outside lighting. She further argues that *Peterson* and *Floyd* support her assertion that whether inadequate lighting constitutes a dangerous condition of Commonwealth property is a question for the fact finder, and, accordingly, the trial court erred when it dismissed her Complaint. In addition, Wise asserts that because both the obscured light and the sidewalk from which she fell were Commonwealth property, her situation is indistinguishable from *Floyd* and *Peterson*.

Initially, this Court emphasizes **the distinction between the duty of care a Commonwealth agency owes to those using its property, and the sovereign immunity defense.** Sovereign immunity bars an action against the Commonwealth *even where the Commonwealth has breached its duty* to those using its property, so long as an exception to sovereign immunity does not apply. Thus, Wise may credibly argue that the Commonwealth breached its duty because the "condition of the property [was not] safe for the activities for which it [was] regularly

13

used, intended to be used or reasonably foreseen to be used[,]" since it was foreseeable that the property would be used at night. *Snyder*, 562 A.2d at 312. Nonetheless, even assuming *arguendo* that such is true, **the Commonwealth's breach of its duty does not remove the sovereign immunity bar precluding Wise's action against the Commonwealth, unless she establishes that her claim comes within one of the exceptions**. *See Manning.*

In *Floyd* and *Peterson*, factual questions existed regarding whether the missing bannister and defective lights were fixtures, and if so, were a dangerous condition of Commonwealth realty. Here, Wise does not claim that the pole light was inoperable or that it did not light the area directly adjacent to and below it – only that the pole light was a significant distance away from where she fell, the light therefrom was obscured by a tree, and there was insufficient lighting in the area where she fell. Wise does not contend that during daylight hours the Commonwealth realty is in any manner defective. In addition, Wise does not assert that the tree directly injured her. Nor does she aver that she fell into the tree or that the tree fell on her. In fact, Wise does not allege that the tree was defective in any way; only that its location obstructed the light coming from the pole light. Rather, **Wise claims that the darkness caused her fall**. She argues that the defect of the Commonwealth's property was that there was darkness at the location where she fell, notwithstanding that darkness is a natural exterior condition at midnight (the time of her fall). **Wise's characterization of the defect as insufficient lighting due to a tree on the property obstructing the pole light's illumination, ignores that, but for the natural nighttime darkness, there is no alleged defect**, i.e., the property only becomes allegedly defective when there is insufficient natural light. In other words, **Wise's complaint is that the Commonwealth failed to alter the natural state of nighttime darkness** which, thereby, caused her fall. Thus, *Peterson* and *Floyd* are also distinguishable in that, here, Wise asserts that either a defect existed **because** an

14

allegedly necessary fixture – additional lighting – **should have been installed**, or a tree (that was not itself defective) **should have been removed** since, according to Wise, **it obstructed artificial light from illuminating a naturally dark exterior area at midnight**.

This Court contrasts Wise's allegations with the situations in *Peterson* and *Floyd* wherein the enclosed building stairwell blocked natural light causing the artificial condition of darkness, and plaintiffs alleged that the housing authority failed to ensure that the lights which were installed to cure the artificially dark area were operative. Unlike in *Floyd* and *Peterson*, where **the lack of natural light was caused by the enclosed stairwell structures**,[7] here, the lack of *exterior* light naturally occurs at night. Wise cannot contend that the nighttime darkness was caused by the Commonwealth realty. Rather, she asserts that the Commonwealth should have taken steps to ameliorate the darkness on its property at midnight. In *Page v. City of Philadelphia*, 25 A.3d 471 (Pa. Cmwlth. 2011), this Court clarified the distinction between natural and artificial conditions. The *Page* Court explained

> On appeal, [the plaintiff] relies on *Commonwealth v. Weller*, . . . 574 A.2d 728 ([Pa. Cmwlth.] 1990), in which our Court concluded that DOT's sovereign immunity was waived when an artificial condition or defect of the land

---

[7] Wise argues in her brief: "As an initial matter, **the fire stairwell in *Floyd*** -- inasmuch as it is designed to provide safe egress during a building fire -- **was *presumably* located on the outside of the building in question**." Wise Br. at 13 (emphasis added). Thus, Wise contends that *Floyd* is directly applicable to the instant matter and binding precedent. There is nothing in *Floyd* describing the stairwell as being on the outside of the building. Wise simply presumes such on the basis that, according to Wise, a **fire** stairwell is "designed to provide safe egress during a building fire." A review of *Floyd* reveals that there is no description, representation or any other indication that the stairs were outside. The *Floyd* Court described the fall location as an "unlit fire **stairwell**[,]" **not** a fire escape. *Floyd*, 623 A.2d at 902 (emphasis added). Merriam-Webster's Collegiate Dictionary (11th ed. 2004) (Merriam-Webster's) defines "stairwell" as a "vertical shaft in which stairs are located." *Id*. at 1214. Further, Merriam-Webster's defines "shaft," in relevant part, as "a vertical opening or passage **through** the floors of a building." *Id*. at 1142 (emphasis added). Thus, based on the *Floyd* Court's description, the stairwell was in the interior of the building.

itself caused an injury to occur. In *Weller,* the facts establish that DOT plowed snow so that it formed a ramp over a berm and guardrail, which decedent's vehicle ascended. *Weller,* however, is inapplicable to the situation now before this Court for the reasons discussed by this Court in *Miller* [*v. Kistler*, 582 A.2d 416 (Pa. Cmwlth. 1990)].

In *Miller*, we specifically distinguished between the type of situation involving a *natural* accumulation of ice and snow that resulted after a roadway was plowed from the type of situation in *Weller*, where snow was piled up to form a ramp, thereby constituting an *artificial* accumulation which rendered the installation of the guardrail ineffective. We concluded that DOT cannot be held liable for the accumulation of snow or ice as a result of improper plowing. In so doing, we rejected the plaintiff's argument that improper plowing by DOT 'created an artificial accumulation of snow and ice' on a sidewalk which caused the plaintiff's injuries. [*Miller*, 582 A.2d at 418]. Relying on our decision in *Vitelli v. City of Chester*, . . . 545 A.2d 1011 ([Pa. Cmwlth.] 1988), we reasoned that plaintiff incorrectly characterized the accumulation of snow and ice as an 'artificial condition.' *Id.* We explained:

> In *Vitelli*, . . . , we held that '[s]hoveled snow is a natural incident of the snowfall which cannot be separated from the snowfall itself. The fact that snow has been shoveled into the street does not change its character from 'natural' to 'artificial.'' Although *Vitelli* was decided under Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542 ([commonly referred to as the Political Subdivision Tort Claims Act,] relating to [local agency] governmental immunity), this Court, by implication, has extended the reasoning of *Vitelli* to cases arising under Section 8522 [of the Act] (relating to sovereign immunity).
>
> Furthermore**, the Supreme Court has held that sovereign immunity is waived pursuant to Section 8522(b)(4) [of the Act] only when it is alleged that the <u>artificial condition</u> itself caused the injury to occur**. Because the

> reasoning of *Vitelli* also applies to the real property exception to sovereign immunity, . . . we hold that any improper plowing by DOT did not create an artificial condition for which DOT can be held liable. A contrary conclusion would allow DOT to avoid liability for leaving roads unplowed but expose DOT to liability whenever it attempts to clear these same roads.

*Id*. (citations omitted).

*Page*, 25 A.3d at 477-78 (citations omitted; bold and underline emphasis added). Unlike the circumstances in *Floyd* and *Peterson*, where the enclosed stairwells along with the missing and/or inoperable fixtures created the darkness which led to the plaintiffs' injuries, **exterior nighttime darkness** on Commonwealth property **is *not* an artificial condition**. **Thus, whether the tree or pole light are fixtures is irrelevant since they did <u>not</u> cause the natural exterior nighttime darkness. Like the snow in *Miller*, the Commonwealth's failure to adequately remove or alter a naturally occurring condition – exterior darkness – is not a situation for which the General Assembly waived sovereign immunity. Although the Commonwealth might have a duty to illuminate a naturally dark exterior area, sovereign immunity bars Commonwealth liability for such alleged failure.**

Wise acknowledged that she saw no physical defect in the sidewalk. Contrary to Wise's contention, the significantly distant pole light and the tree situated between the pole light and her fall location did not create the already existing natural darkness. There was no artificial change to the Commonwealth's realty from the day to nighttime. Given the earth's natural rotation from light to darkness, the alleged dangerous condition – darkness – did not "derive, originate from or have as its source the Commonwealth realty." *Snyder*, 562 A.2d at 311. Like falling snow, nighttime darkness visits Commonwealth property naturally. Also like snow, the Commonwealth's failure to properly or completely ameliorate natural exterior

17

nighttime darkness does not create an artificial condition. Therefore, HACH's alleged failure to adequately illuminate the sidewalk area during hours of darkness did not create an artificial condition or defect of Commonwealth realty for which HACH may be held liable.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon Wise,                                          :
                      Appellant          :
                                   :
                  v.                          :
                                   :
Huntingdon County Housing             :
Development Corporation, Housing      :
Authority of the County of Huntingdon,   :
Chestnut Terrace Resident's Association   :
and Weatherization Inc., a Non Profit   :
Corporation d/b/a Huntingdon County   :     No. 1387 C.D. 2018
Housing Services                      :

## O R D E R

AND NOW, this 12th day of June, 2019, the Huntingdon County Common Pleas Court's February 10, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge