**[J-67-2020] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| SHARON WISE, | : | No. 97 MAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1387 |
| | : | CD 2018 dated June 12, 2019 |
| v. | : | Affirming the Order of the |
| | : | Huntingdon County Court of |
| | : | Common Pleas, Civil Division, at No. |
| HUNTINGDON COUNTY HOUSING | : | CP-31-CV-344-2015 dated February |
| DEVELOPMENT CORPORATION, | : | 10, 2017. |
| HOUSING AUTHORITY OF THE COUNTY | : | |
| OF HUNTINGDON, CHESTNUT TERRACE | : | ARGUED:  September 15, 2020 |
| RESIDENT'S ASSOCIATION AND | : | |
| WEATHERIZATION INC., A NON PROFIT | : | |
| CORPORATION D/B/A HUNTINGDON | : | |
| COUNTY HOUSING SERVICES, | : | |
| | : | |
| Appellees | : | |

**CONCURRING OPINION**

**JUSTICE WECHT**                                           **DECIDED:  April 28, 2021**

On May 9, 2013, Sharon Wise was injured when she tripped and fell while walking on a sidewalk in a public housing complex at night.  In her ensuing negligence action against the Housing Authority of the County of Huntington (HACH), Wise alleged that the cause of her fall was insufficient outdoor lighting resulting from the relative position of a light pole and a tree which obstructed that light.[1]  HACH moved for summary judgment, arguing that Wise's suit was barred by sovereign immunity.  Wise responded that her

---

[1]      Maj. Op. at 2.

claim fell within the real estate exception to sovereign immunity.[2] HACH replied that the exception was inapplicable because the sidewalk itself was not a dangerous condition, and because the allegedly insufficient lighting was not a condition of the real estate.

Persuaded by HACH's argument against the applicability of the real estate exception, the trial court granted HACH's motion for summary judgment, dismissing Wise's case. Wise appealed. The Commonwealth Court affirmed, holding that, while HACH may have had a duty to light naturally dark exterior areas, sovereign immunity barred liability for HACH's breach of this duty.[3] According to the Commonwealth Court,

---

[2] 42 Pa.C.S. § 8522, entitled "Exceptions to Sovereign Immunity," provides, in relevant part, as follows:

> (a) Liability imposed.--The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.
>
> (b) Acts which may impose liability.--The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> *    *    *
>
> (4) Commonwealth real estate, highways and sidewalks.--A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

[3] *Wise v. Huntingdon Cty. Hous. Dev. Corp.*, 212 A.3d 1156 (Pa. Cmwlth. 2019).

it was natural nighttime darkness, not the positioning of the light pole in relation to the tree and the sidewalk, that allegedly caused Wise's fall.[4] The Commonwealth Court viewed Wise's allegations as being premised upon HACH's failure "**to alter the natural state of nighttime darkness**," and held that sovereign immunity barred Wise's claim.[5] We granted review in order to examine whether outdoor lighting of Commonwealth property resulting from the location of a light pole and from a tree blocking that light is a dangerous condition of the Commonwealth property under the real estate exception to sovereign immunity.

I agree with the Majority's reversal of the Commonwealth Court's erroneous decision. Wise's claim of insufficient lighting alleges that a dangerous condition of Commonwealth realty caused her injuries. Therefore, Wise successfully invoked the real estate exception to sovereign immunity. I write separately to delineate the unambiguous requirements of the real estate exception and to urge adherence to the exception's plain language. Our precedent has departed from that statutory language to the extent that it has advanced a non-textual and unsupported distinction between the Commonwealth's acts and omissions.

Mindful that exceptions to sovereign immunity must be strictly construed,[6] this Court has found no ambiguity in the requirements of the real estate exception. *See*

---

[4]     *Id*. at 1165.

[5]     *Id*. at 1166, 1167 (emphasis in original).

[6]     *See Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 440 (Pa. 2001) ("Because the legislature's intent in both the Sovereign Immunity and Tort Claims Acts is to shield government from liability, except as provided for in the statutes themselves, we apply a rule of strict construction in interpreting these exceptions."); *see also Dean v. Commonwealth, Dep't of Transp.,* 751 A.2d 1130, 1132, 1134 (Pa. 2000); *Finn v. City of Philadelphia*, 664 A.2d 1342, 1344 (Pa. 1995); *Kiley v. City of Philadelphia*, 645 A.2d 184, 185-86 (Pa. 1994); *Snyder*, 562 A.2d at 311; *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987).

*Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989) (observing that the language of Section 8522(b)(4) is unambiguous). The Court has examined the language of Subsections 8522(a) and 8522(b)(4) together, discerning in them three prerequisites to the imposition of liability upon the Commonwealth under the real estate exception:

> [I]n order for liability to be imposed . . . , three statutory requirements must be met. First, the injury must have resulted from a "dangerous condition." [42 Pa.C.S.] § 8522(b)(4). Second, the dangerous condition must be a condition "of Commonwealth agency real estate." *Id.* Third, the damages must be recoverable under common law "if the injury were caused by a person not having available the defense of sovereign immunity." *Id.* § 8522(a).

*Cagey v. Commonwealth, Dep't of Transp.*, 179 A.3d 458, 463 (Pa. 2018). The *Cagey* test thus takes the two prongs of Subsection 8522(b)(4)'s real estate exception and combines them with Subsection 8522(a)'s requirement that the damages must be damages that would be recoverable at common law had the injury not been caused by the sovereign.

In order to impose liability against a Commonwealth entity, the plaintiff must satisfy the general requirements of Subsection 8522(a) and the particular exceptions of Subsection 8522(b). In asking whether damages would be recoverable against "a person not having available the defense of sovereign immunity," Subsection 8522(a) indicates that, although the General Assembly has waived sovereign immunity in specified circumstances, the Commonwealth in any event is not to be held to a higher standard than a private tort defendant. Under Subsection 8522(b), the plaintiff must establish causation, *i.e.,* that the damages were caused by particular acts bringing the cause of action within the relevant exceptions. And within the real estate exception in particular, there are two requirements: (1) that the injury resulted from "a dangerous condition;" and (2) that the dangerous condition was "of Commonwealth agency real estate." 42 Pa.C.S.

§ 8522(b)(4). Because the Subsection 8522(a) question is not before us in this case,[7] the issue presented implicates only the real estate exception under Subsection 8522(b)(4).[8]

In my view, the *Cagey* test fails to recognize a necessary requirement: causation. Although *Cagey* omitted the causation prong from its articulation of the real estate exception, Subsection 8522(b) generally requires causation for any exception to sovereign immunity. *Id.* § 8522(b). A more complete analysis of the real estate exception would encompass causation. Accordingly, while the *Cagey* Court divided the real estate exception into only two questions, *i.e.*, (1) whether a condition is "dangerous;" and (2) whether it is "of Commonwealth agency real estate,"[9] we should apply a three-prong approach: one that incorporates both of the *Cagey* prongs in addition to the causation analysis required of all exceptions to sovereign immunity under Subsection 8522(b). This three-prong approach presents a more complete view of what the plain language of the real estate exception requires.

The first requirement is that there is a "dangerous condition." 42 Pa.C.S. § 8522(b)(4). This requirement "is unambiguous and plainly encompasses any condition

---

[7]     Although the issue in this case implicates only Subsection 8522(b), HACH and the Office of the Attorney General (OAG) attempt to invoke Subsection 8522(a) as well, asserting that there is no common law duty in this case because they had no notice of the allegedly hazardous condition. Because this argument implicates Section 8522(a), it is beyond the scope of this appeal.

[8]     This Court generally has addressed the Subsection 8522(b) exceptions before deciding whether such a duty exists at common law or under statute. *See, e.g.*, *Cagey*, 179 A.3d at 464 ("We begin with the first requirement that their injuries resulted from a 'dangerous condition.'"); *Dean*, 751 A.2d at 1132 ("[W]e must first examine the exception to sovereign immunity which Appellee contends her claims falls under."); *Snyder*, 562 A.2d at 311 ("In order to ascertain that duty, it is necessary to first examine Section 8522(b)(4).").

[9]     *Cagey,* 179 A.3d at 463; Maj. Op. at 11.

that presents a danger." *Cagey*, 179 A.3d at 464. We have held that "[w]hether a dangerous condition exists is a question of fact for the jury to resolve." *Dean*, 751 A.2d at 1135. The plain text of the statute does not restrict "condition" to a single factor. Rather, a dangerous condition can be comprised of a combination of factors that the factfinder could determine to be dangerous. *See, e.g., Floyd v. Philadelphia Hous. Auth.*, 623 A.2d 901 (Pa. Cmwlth. 1993) (finding that an alleged combination of factors in a stairwell in a public housing complex could constitute a dangerous condition); *Peterson v. Philadelphia Hous. Auth.,* 623 A.2d 904 (Pa. Cmwlth. 1993).

Here, it is undisputed that Wise sufficiently alleged that the condition was "dangerous." OAG and HACH do, however, argue that a "dangerous condition" can only be understood in the singular. I would reject this argument outright, as a dangerous condition may include a combination of factors, any one of which, standing alone, would not be dangerous. The plain language of the statutory term "condition" supports this interpretation. In this case, the light pole and the tree are not dangerous in and of themselves. Rather, as the Majority recognizes, the combination of the light pole, the tree, and the resulting lack of illumination on a portion of the sidewalk created the danger. *See* Maj. Op. at 20 (describing Wise's allegation that the dangerous condition was the insufficient lighting by way of the light pole, tree, and sidewalk). As a matter of law, a "dangerous condition" may result from a number of factors working in tandem. Whether that condition actually was dangerous is a question for the factfinder.

Second, the statute requires an examination of whether the dangerous condition is "of Commonwealth agency real estate." 42 Pa.C.S. § 8522(b)(4). This is a legal question. *See Finn*, 664 A.2d at 1346 ("The common theme of all these cases is that liability depends, first, on the legal determination that an injury was caused by a condition of government realty itself . . . and, only then, [on] the factual determination that the

condition was dangerous."). Like the first requirement, this second requirement contains no ambiguity. *Cagey*, 179 A.3d at 464 ("We find this statutory requirement [that the condition be 'of the Commonwealth agency real estate'] to be unambiguous as well."). As our precedent states, "[t]hese key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Snyder*, 562 A.2d at 311.

Third, similar to the "dangerous condition" requirement, whether the condition of Commonwealth realty caused the plaintiff's injuries "is normally a question of fact for the jury; the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Hamil v. Bashline*, 392 A.2d 1280, 1285 (Pa. 1978). And the Commonwealth realty's dangerous condition need not be the sole cause, but, rather, in line with our precedent regarding causation, must be "a substantial factor in bringing about the plaintiff's harm," as well as a factual cause of the injuries. *Id.* at 1284. Of course, there may be instances in which the court, as a matter of law, may find that the plaintiff has not met his or her burden with regard to causation. *Accord Mascaro*, 523 A.2d at 1125 (Hutchinson, J., concurring) ("[O]n these facts, a proximate cause analysis would insulate appellants from liability for negligence.").

In my view, and premised upon the plain language of the real estate exception, in order for a plaintiff to invoke the real estate exception to sovereign immunity, he or she "must plead and prove a *prima facie* claim of negligence to survive the pleading" and summary judgment phases. *Cagey*, 179 A.3d at 474 (Wecht, J., concurring). Part of that *prima facie* case must include an allegation that "a dangerous condition of the [Commonwealth agency real estate] caused the" injury. *Smith v. Commonwealth, Dep't of Transp.*, 700 A.2d 587, 591 (Pa. Cmwlth. 1997). When the Commonwealth's property contributes to a dangerous set of circumstances, the real estate exception operates to waive sovereign immunity.

In the past, this Court has read additional meaning into the word "of" in Subsection 8522(b)(4). *See, e.g.*, *Finn*, 664 A.2d at 1346.[10] But "of" plainly states the obvious: only dangerous conditions that have a relationship to the Commonwealth's property can be a basis for a waiver of immunity. Indeed, the prepositional phrase "of Commonwealth agency real estate" acts as an adjective that describes the noun phrase "dangerous conditions." Because "Commonwealth agency" modifies the noun "real estate," the property that relates to the dangerous conditions must belong to the Commonwealth. As such, only dangerous conditions over which the Commonwealth has control permit waiver of immunity.

Other dangerous conditions, or negligence over which the Commonwealth has no control, cannot waive immunity. In other words, the General Assembly's decision to restrict the waiver of immunity to dangerous conditions "of Commonwealth agency real estate" reinforces the causation requirement of Subsection 8522(b); only in instances where the Commonwealth's realty itself, or maintenance thereof, causes the plaintiff's injuries is immunity waived.

Consistent with my view that the word "of" is to be read broadly, I believe that a condition may be "of" Commonwealth realty regardless of whether it results from the Commonwealth's act or omission. In its broadest sense, "of" simply expresses a relationship between two things. The manner by which the Commonwealth exercises its control of the condition and the property is irrelevant. Whether that relationship was created through act or omission has no bearing upon the analysis. In this regard, our

---

[10] Our precedent had suggested that the real estate exception included an on/of distinction under which immunity was waived if an alleged injury resulted from a dangerous condition "of" Commonwealth realty, but not if the dangerous condition was "on" Commonwealth realty. *See Finn*, 664 A.2d at 1346. As the Majority observes, however, we rejected this on/of distinction in *Jones*. Maj. Op. at 15 (citing *Jones*, 772 A.2d at 443).

precedent has created an unwarranted distinction between circumstances in which the Commonwealth takes no action to lesson a dangerous situation, and those in which the Commonwealth takes some step to lessen the dangerous situation, but does so negligently or fails to maintain that condition in a non-negligent manner.

This artificial and non-textual distinction encourages the Commonwealth not to resolve dangerous conditions, thereby creating a perverse incentive that was on display in *Dean* and *Cagey*. In *Dean*, this Court held that "the Commonwealth's failure to erect a guardrail on the highway is not encompassed by the real estate exception to sovereign immunity." *Dean*, 751 A.2d at 1134. In *Cagey*, the Court found that an allegation of a "defective, negligently installed and uncrashworthy" guardrail was sufficient to waive immunity. *Cagey*, 179 A.3d at 464. As I observed in a concurring posture in *Cagey*:

> Under the Majority's holding, the Commonwealth waives immunity for defective guardrails. Yet, under *Dean*, the Commonwealth is immune if it never installs those guardrails in the first place. Thus, although the Commonwealth may have a statutory and common-law duty to make its highways reasonably safe for the purposes for which they are used, *Dean* tacitly insists that the Commonwealth need not install guardrails at all, even when they are obviously necessary to highway safety.

*Id.* at 473-74 (Wecht, J., concurring).[11]

I continue to believe, as I explained in *Cagey*, that *Dean* was wrongly decided. As I wrote therein:

> For the reasons stated above, I would overrule *Dean*, apply the duty set forth in *Snyder*, and adopt the test outlined by Justice Newman in her *Dean* dissent. Under *Snyder*, the Commonwealth has a duty to ensure that "the condition of [Commonwealth] property is safe for the activities for which it is

---

[11]     Similarly, the Commonwealth Court found a waiver of sovereign immunity when PennDOT plowed snow into an artificial mound that created a hazard, *Commonwealth, Dep't of Transp. v. Weller*, 574 A.2d 728, 730 (Pa. Cmwlth. 1990), but held that PennDOT "has no common law duty to remove natural accumulations of ice and snow from a public road," implying that, had PennDOT done nothing, the suit would have been dismissed. *Id.*

regularly used, intended to be used[,] or reasonably foreseen to be used." *Snyder*, 562 A.2d at 312. Under the real estate exception, the Commonwealth waives immunity when "the condition of government property created a reasonably foreseeable risk of harm that actually happened." *Dean*, 751 A.2d at 1135 (Newman, J., dissenting). . . . When a plaintiff is injured by an unsafe condition on Commonwealth realty, whether the condition is created by omission or commission, under circumstances that would otherwise impose liability on a private landowner, the Commonwealth is exposed to potential liability regardless of whether the danger was associated with the highway itself or with its immediate surroundings.

*Id.* at 474 (Wecht, J., concurring).

Similarly, with regard to claims premised upon the absence of lighting, I continue to urge the following clarification of *Snyder* and its absence-of-lighting language:

I would also clarify *Snyder* to the extent that its "absence of lighting" language seems to imply that the absence of any and all safety features cannot render Commonwealth realty dangerous. As noted *supra*, under our common law, a plaintiff may pursue a negligence claim against a landowner for failing to make her property reasonably safe, which necessarily includes the installation of reasonable safety features. Likewise, *Dean*'s extension of this rationale to guardrails provides yet another reason to overrule *Dean*.

*Id.* at 474 n.10 (Wecht, J. concurring). Although the outcome in *Snyder* was correct—the injury did not occur on Commonwealth property—*Snyder*'s suggestion that the absence of lighting cannot be a dangerous condition "of" Commonwealth realty finds no textual support in Subsection 8522(b)(4).

Given my view that claims premised upon the Commonwealth's acts or omissions are equally susceptible to the real estate exception, I cannot join the Majority's attempt to fit this case within our precedent distinguishing between the two.[12] Whether a claim is premised upon a guardrail as in *Cagey*, or the absence of the guardrail as in *Dean*, or whether it is premised upon insufficient lighting as in this case, or the absence of lighting as in *Snyder*, the real estate exception is implicated as long as the plaintiff has alleged

---

[12]    Maj. Op. at 17-18.

that some feature of the Commonwealth's realty, in some way, contributed to the dangerous condition that caused the plaintiff's injuries.[13] The real estate exception applies equally to a condition or the absence of a condition. I do not agree with the portion of the Majority Opinion that makes the real estate exception contingent upon the presence of inadequate lighting, rather than the absence of lighting altogether, or premises the outcome upon an alignment with *Cagey* rather than *Dean*.[14] The judicial preservation of this unwarranted distinction between acts of omission and acts of commission fortifies the perverse incentive that the Court supplies to Commonwealth agencies: encouraging such agencies to forego the installation of protective features on Commonwealth property.[15]

To date, the Court has remained unpersuaded by my concern that our precedent incentivizes the Commonwealth to forego the installation of safety features on Commonwealth realty for fear of being held liable for injuries caused by safety features that turn out to be dangerous. *See Cagey*, 179 A.3d at 471, 473-74 (Wecht, J., concurring). Today, the Majority does acknowledge my criticism that its holding could be construed as encouraging the Commonwealth to forego the installation of lighting altogether rather than risk exposing the Commonwealth to liability for negligence arising

---

[13] Any questions regarding the proportion of the Commonwealth's liability are issues for the jury. *See Kiley*, 645 A.2d at 186 (permitting concurrent liability for the Commonwealth under the real estate exception).

[14] Maj. Op. at 18.

[15] The Majority acknowledges the concern but chooses again simply to hope for the best with respect to Commonwealth agency conduct. Maj. Op. at 16 n.10 ("we refused to 'assume that the Commonwealth would act negligently, or even recklessly, for such a purpose'" (citing *Cagey*, 179 A.3d at 466 n.6)); *id.* at 18. n.12 ("'we will not assume that the Commonwealth would act negligently, or even recklessly' for purposes of avoiding potential liability by foregoing the installation of lighting" (citing *Cagey*, 179 A.3d at 466 n.6)).

from its defective lighting conditions.[16] In *Cagey*, the Majority refused to believe that the Commonwealth would act negligently by foregoing attempts to improve the safety of Commonwealth realty in order to avoid application of the real estate exception and to maintain sovereign immunity. *Cagey*, 179 A.3d at 466 n.6. Today's Majority continues to adhere to this rationale notwithstanding my concerns.[17]

I remain unpersuaded by the Majority's unwavering faith in Commonwealth agencies. By exposing the Commonwealth to liability when the Commonwealth negligently designs or installs safety features while simultaneously insulating the Commonwealth from liability when it offers no safety features at all, our precedent encourages the Commonwealth to forego making its property safe, "confident that it cannot be held liable for any harm that ensues." *Cagey*, 179 A.3d at 470 (Wecht, J., concurring). The Majority continues to "subordinate[ ] the Commonwealth's duty to protect its citizens to *Dean's* implicit concern for protecting the public fisc." *Id.* at 474 (Wecht, J. concurring). Although the Commonwealth has a duty to keep the public safe, this duty is undermined by the financial incentive not to install safety features, an incentive that our precedent creates. If there is no sovereign immunity whenever the injury is alleged to have been caused by dangerously designed or installed safety features of Commonwealth realty, but complete immunity when no safety features are installed, why would Commonwealth agencies install any safety features at all?

Our role as the judiciary is to apply the unambiguous language of the statute. There is no basis in the plain language of the real estate exception that supports the act/omission distinction which the Majority perpetuates today. If the General Assembly wanted to narrow the scope of sovereign immunity beyond its plain terms, it could do so

---

[16]    *Id.* at 18 n.12.

[17]    *Id.*

by amending the language of the Sovereign Immunity Act. Presently, there is no textual basis for this Court to perpetuate the judge-manufactured distinction between negligently designed or installed safety features on the one hand and no safety features at all on the other.

Nevertheless, I agree with the Majority's conclusion that Wise's claim is sufficient to invoke the real estate exception. Maj. Op. at 17. Wise alleges that the dangerous condition of insufficient outdoor lighting derives from, originates in, or has as its source Commonwealth realty, *id.* (citing *Snyder*, 562 A.2d at 311), and that this dangerous condition caused Wise's injuries. Sovereign immunity does not bar Wise's claim. Like the Majority, I would reverse the order of the Commonwealth Court and would remand for further proceedings. I concur in the judgment reversing the order of the Commonwealth Court.

Justice Dougherty joins this concurring opinion.