IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SHARON WISE, | : | No. 97 MAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1387 |
| | : | CD 2018 dated June 12, 2019 |
| v. | : | Affirming the Order of the |
| | : | Huntingdon County Court of |
| | : | Common Pleas, Civil Division, at No. |
| HUNTINGDON COUNTY HOUSING | : | CP-31-CV-344-2015 dated February |
| DEVELOPMENT CORPORATION, | : | 10, 2017. |
| HOUSING AUTHORITY OF THE COUNTY | : | |
| OF HUNTINGDON, CHESTNUT TERRACE | : | ARGUED:  September 15, 2020 |
| RESIDENT'S ASSOCIATION AND | : | |
| WEATHERIZATION INC., A NON PROFIT | : | |
| CORPORATION D/B/A HUNTINGDON | : | |
| COUNTY HOUSING SERVICES, | : | |
| | : | |
| Appellees | : | |

## OPINION

**CHIEF JUSTICE BAER**                                        **DECIDED:  April 28, 2021**

We granted discretionary review of this matter to consider whether insufficient outdoor lighting of Commonwealth property, occurring because of the location on the property of a pole light and a tree blocking the light emitting from the pole light, constitutes a "dangerous condition of" the property for purposes of the real estate exception to sovereign immunity.  *See* 42 Pa.C.S. § 8522(b)(4) (explaining that "sovereign immunity shall not be raised to claims for damages caused by … [a] dangerous condition of Commonwealth agency real estate," sidewalks, and highways).  For the reasons that follow, we answer this question in the affirmative.  As the Commonwealth Court reached

a contrary result, we reverse that court's order and remand this matter for further proceedings.

On March 9, 2015, Sharon Wise (Wise) filed a negligence action against the Housing Authority of the County of Huntingdon (HACH) alleging that, at approximately 12:10 a.m. on May 9, 2013, she tripped and fell while walking on a sidewalk in the Chestnut Terrace public housing complex in Mount Union, Pennsylvania.[1] While Wise originally claimed that "insufficient lighting and demar[c]ation of the … sidewalk, and/or … a defect within the sidewalk itself" caused her fall, Complaint, 3/9/2015, at ¶ 9, she has since limited the cause of her fall to the alleged insufficient outdoor lighting of the sidewalk area, purportedly due to the location of a pole light and a tree obstructing the light provided. *See, e.g,* Wise's Brief in Opposition to HACH's Motion for Summary Judgment, 11/14/2016, at unnumbered page 2. Wise further asserted that, at the time of the accident, HACH: (1) was responsible for the maintenance, control, and supervision of the dangerous condition of the sidewalk area; (2) knew or should have known of the dangerous condition of the sidewalk area and its insufficient illumination, and (3) failed to take corrective action. *Id.* at ¶¶ 10-11. Wise claimed that she suffered severe and permanent injuries and losses as a result of the accident. *Id.* ¶ 12.

During the course of the proceedings, HACH filed a motion for summary judgment asserting that, *inter alia*, sovereign immunity barred Wise's claim. On this point, HACH argued that the only exception to immunity that was potentially applicable to Wise's claim was the real estate exception set forth in Section 8522(b)(4) of the Sovereign Immunity Act (Act), *supra* at page 1, which requires that a dangerous condition "derive, originate

---

[1] It is undisputed that HACH owns the housing complex. We further note that Wise's complaint also named the Huntingdon County Housing Development Corporation, the Chestnut Terrace Resident's Association, and Weatherization, Inc., A Non-profit Corporation d/b/a Huntingdon County Housing Services as additional defendants. She ultimately filed a Praecipe to Discontinue Action in the trial court withdrawing with prejudice all claims against those parties.

from or have a[s] its source the Commonwealth realty." HACH's Brief in Support of Motion for Summary Judgment, 10/17/2016, at 8 (quoting *Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989)). HACH contended that there was no defect in the sidewalk, as Wise had acknowledged, and that "[a]llegedly insufficient lighting is not a condition or defect of the land itself." *Id.* Thus, according to HACH, Wise's claim could not serve as a basis to waive sovereign immunity.

Wise filed a brief in opposition to HACH's motion. Therein, Wise alleged that genuine issues of material fact existed in this case and challenged HACH's argument that sovereign immunity barred her claim of insufficient lighting because as a matter of law it did not constitute a condition or defect of the land itself under the real estate exception. In support of her position, Wise argued that the question of whether inadequate lighting constitutes a defect in the property is a question of fact for the jury, relying upon *Peterson v. Philadelphia Housing Authority*, 623 A.2d 904, 906 (Pa. Cmwlth. 1993) (holding that whether the inadequate stairwell lighting system at issue constitutes a defect in the real property, by way of its status as a fixture, and thus a dangerous condition of the Philadelphia Housing Authority's (Authority) real estate, as contemplated by Section 8522(b)(4), was a question of fact for the jury), and *Floyd by Floyd v. Philadelphia Housing Authority*, 623 A.2d 901, 903 (Pa. Cmwlth. 1993) (relying on *Peterson* to hold that the trial court erred in concluding as a matter of law that the inadequate lighting system in a stairwell was not a defect in the Commonwealth realty).[2] Thus, Wise asserted that HACH was not entitled to the entry of summary judgment in its favor.

_____

[2] By way of further explanation, *Peterson* and *Floyd* involved claims for damages arising out of injuries individuals sustained while descending interior stairwells in buildings owned by the Authority that were alleged to be inadequately lit. In both cases, the trial court awarded summary judgment in favor of the Authority based on immunity and the inapplicability of the real estate exception as a matter of law. The Commonwealth Court reversed the trial court's award of summary judgment in each case, rendering their holdings set forth above. *Peterson*, 623 A.2d at 906-07; *Floyd*, 623 A.2d at 903.

Thereafter, HACH filed a reply brief reiterating its position that Wise's claim was insufficient to waive sovereign immunity. HACH further argued that *Peterson* and *Floyd* were distinguishable because they held that it was for a jury to determine whether the inadequate stairwell lighting system at issue in each case constituted a fixture and, thus, could be deemed to be a defect of the land itself. HACH contended that, in contrast, Wise failed to demonstrate that the subject light pole was defective, regardless of whether it was a fixture.

On February 10, 2017, the trial court granted HACH's motion for summary judgment, dismissed Wise's case, and entered judgment in HACH's favor. Wise appealed the trial court's order.[3] In its opinion issued pursuant to Pa.R.A.P. 1925(a), the trial court concluded that Wise's claim was barred by sovereign immunity. The trial court agreed with HACH that the only viable exception to the application of immunity in this case was the real estate exception and that, in order for that exception to apply, "the defect must derive, originate, or have its source as the Commonwealth realty itself." Trial Ct. Rule 1925(a) Op., 4/21/2017, at 2 (citing *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 443 (Pa. 2001)). The trial court opined that there was no defect in the sidewalk itself, as was undisputed by the parties, and that the real estate exception was not so expansive to encompass Wise's claim of inadequate outdoor lighting.

In doing so, the trial court rejected Wise's reliance on *Floyd* and *Peterson* to support her argument that there was a material factual dispute regarding the adequacy of lighting rendering the award of summary judgment to HACH inappropriate. The trial court explained that Wise was improperly attempting to broaden the holdings of those cases, which concerned allegations of inadequate stairwell lighting in government-owned buildings, to "all types of lighting, even outside lighting." Trial Ct. Rule 1925(a) Op.,

---

[3] Wise originally filed her appeal in the Superior Court, which transferred the action to the Commonwealth Court.

4/21/2017, at 2. Based on the foregoing, the trial court concluded that Wise's cause of action failed as a matter of law.

On appeal, a three-judge panel of the Commonwealth Court affirmed the trial court's order in a unanimous, published opinion. *Wise v. Huntingdon Cnty. Devel. Corp.*, 212 A.3d 1156 (Pa. Cmwlth. 2019). Initially, the court highlighted that, even where the Commonwealth has breached a duty owed to those using its property, sovereign immunity will bar a claim against the Commonwealth so long as an exception to sovereign immunity does not apply. *Id.* at 1165. Thus, like the trial court, the Commonwealth Court focused its analysis on whether Wise had met the real estate exception under Subsection 8522(b)(4).

The Commonwealth Court noted that Wise characterized the alleged defect of the Commonwealth realty "as insufficient lighting due to a tree on the property obstructing the pole light's illumination." *Id.* at 1165. The Commonwealth Court observed, however, that Wise's characterization "ignore[d] that, but for the natural nighttime darkness, there is no alleged defect." *Id.* In this regard, the Commonwealth Court highlighted that Wise did not allege that the pole light or tree themselves were defective, that the tree directly injured her, or that the Commonwealth realty was defective in any manner during daylight hours. Thus, the court concluded that Wise's complaint was, in actuality, that "the Commonwealth failed to alter the natural state of nighttime darkness," causing her fall. *Id.* at 1166.

Based upon its characterization of her claim, the Commonwealth Court held that the real estate exception did not apply. In doing so, the court distinguished this case from *Peterson* and *Floyd*. The court first noted that, unlike this case, *Peterson* and *Floyd* involved factual questions regarding whether the defective lights were fixtures and, if so, whether they constituted a dangerous condition of Commonwealth realty. The Commonwealth Court added that, in *Peterson* and *Floyd*, the enclosed building stairwells

caused the "artificial condition of darkness" by blocking natural light, and the plaintiffs alleged that the Authority "failed to ensure that the lights which were installed to cure the artificially dark area were operative." *Id.*

The Commonwealth Court reasoned that, in contrast, the exterior nighttime darkness here was not an artificial condition caused by the Commonwealth realty, but rather occurred naturally. *Id.* at 166-67 (explaining further that, "[g]iven the earth's natural rotation from light to darkness, the alleged dangerous condition – darkness – did not 'derive, originate from or have as its source the Commonwealth realty'" (quoting *Synder*, 562 A.2d at 311)). The court thus opined that because the tree or pole light did not cause the already-existing natural darkness, whether they constituted fixtures was irrelevant. The court also distinguished *Peterson* and *Floyd* on the basis that, in its view, Wise claimed that a defect existed because a necessary fixture (*i.e.*, additional lighting) should have been installed, or a tree should have been removed.

Additionally, the Commonwealth Court explained that, while Wise claimed that the Commonwealth should have taken steps to ameliorate the natural nighttime darkness on its property, "the Commonwealth's failure to adequately remove or alter a naturally occurring condition – exterior darkness – is not a situation for which the General Assembly waived sovereign immunity." *Id.* at 1167. In this regard, the court likened the naturally occurring darkness to snow, which also "visits Commonwealth property naturally," and relied upon *Miller v. Kistler*, 582 A.2d 416, 418 (Pa. Cmwlth. 1990) (holding that "any improper plowing [of snow] by [the Pennsylvania Department of Transportation (DOT)] did not create an artificial condition for which DOT can be held liable"), among other cases, to hold that the Commonwealth's failure to ameliorate the exterior nighttime darkness did not create an artificial condition for which it could be exposed to liability. *Wise*, 212 A.3d at 1166-67.

Based on the foregoing, the Commonwealth Court held that, while the Commonwealth may have a duty to light a naturally dark exterior area, sovereign immunity barred Commonwealth liability for its breach of that duty. As HACH could not be held liable for its alleged failure to illuminate the sidewalk adequately "during hours of darkness," the Commonwealth Court affirmed the trial court's order granting HACH summary judgment and dismissing Wise's complaint. *Id.* at 1167-68.

Wise then filed a petition for allowance of appeal with this Court, which granted review of the following question, as stated by Wise:

> Whether the Commonwealth Court, in affirming the Huntingdon County Trial Court's grant of Summary Judgment, has unwarrantedly expanded sovereign immunity under 42 Pa.C.S.[] § 8521 et. seq., and hence, continued the dwindling applicability of the real estate exception under 42 Pa.C.S.[] § 8522(b)(4) to a dangerous level in its continued disregard of the legislative intent of the Sovereign Immunity Act and enumerated exceptions, and also advances existing conflict and confusion within an already unclear legal history?

*Wise v. Huntingdon Cnty. Housing Devel. Corp.*, 222 A.3d 748 (Pa. 2019) (*per curiam*). This issue presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary. *Balentine v. Chester Water Auth.*, 191 A.3d 799, 803 (Pa. 2018).[4]

Wise argues that the Commonwealth Court erred in its characterization of the "dangerous condition" alleged and its determination that the condition was not "of" Commonwealth realty for purposes of the real estate exception. According to Wise, she alleges that the "dangerous condition" was "the combination of the lamppost and tree creating a shadow on a portion of sidewalk where [she] fell." Wise's Brief at 16. She further claims that the lamppost, pathways, and tree are fixtures of the property and, thus, the dangerous condition alleged is "of" the property. *Id.* Wise emphasizes that the

---

[4] Further, we will "reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." *Balentine*, 191 A.3d at 803 n.3 (quoting *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 818 (Pa. 2017)).

Commonwealth "conceived, designed and built" an apartment complex on its land, making decisions about things such as pathways, landscaping, grounds, and lighting. *Id.* at 17. According to Wise, the Commonwealth fashioned its real estate in a manner that did not provide pedestrians legally on the property "a safe area on which to walk due to the shadow *created* by" the Commonwealth. *Id.* (emphasis in original).

Wise submits that, given the above, it is a simple matter to conclude that the real estate exception applies. However, according to Wise, the Commonwealth Court ignored the factors she identified as giving rise to the dangerous condition and incorrectly identified the defect alleged as natural darkness. Wise claims that, in doing so, the court came to the "clearly nonsensical" conclusion that "the earth's natural rotation around the sun causing darkness transcends and thus supersedes any and all dangerous conditions created by the Commonwealth" on its real estate, thereby implying that the mere existence of a natural condition required to bring on the alleged defect was fatal to Wise's cause of action. *Id.* at 15-16, 21 n.16. Wise asks that we reverse the Commonwealth Court's "outcome driven" decision and remand the matter for further proceedings.[5]

HACH counters that, while the Political Subdivision Tort Claims Act (PSTCA) applicable to local agencies contains a specific exception pertaining to lighting, *see* 42 Pa.C.S. § 8542(b)(4) (outlining an exception to governmental immunity for dangerous conditions of "trees, traffic signs, lights or other traffic controls, street lights or street lighting systems"), the Act does not provide for a similar exception. HACH argues that this distinction was intentionally made by the Legislature and that Wise's attempt to

---

[5] The Pennsylvania Association for Justice (PAJ) has filed an *amicus curiae* brief on behalf of Wise. Therein, PAJ agrees with Wise that this is a simple case concerning inadequate artificial lighting that created a dangerous condition. PAJ highlights that, given the appropriate proofs, reasonable minds could conclude that the fall resulted from that inadequate lighting, which made the real estate dangerous, or that the Commonwealth had reasonably fulfilled its duties.

broaden the Act's real estate exception, the only possible exception applicable to the current matter, to encompass her lighting claim is inappropriate. HACH submits that, pursuant to the real estate exception, immunity will only be waived when the negligence alleged arises from a dangerous condition that "derived, originated or had as its source the Commonwealth realty itself." HACH's Brief at 12 (quoting *Jones*, 772 A.2d at 441).

HACH emphasizes that Wise has not alleged that the sidewalk, pole light, or tree were themselves defective in any way, but rather claims that a combination of those non-dangerous factors created a dangerous condition. According to HACH, Wise's claim does not stem from a defect that derived, originated, or had as its source Commonwealth real estate. HACH adds that, to make an assertion that light, the absence of light, or insufficient lighting constitutes a defect "of" the property is completely contrary to the Act and applicable precedent, discussed in relevant part below.

HACH submits that, in contrast to Wise's position, the Commonwealth Court's decision is sound, as it is supported by the case law. HACH also contends that the court appropriately distinguished *Floyd* and *Peterson* on the basis that they involved interior lighting and concerned whether that lighting qualified as fixtures, and, if so, were a dangerous condition of Commonwealth realty. HACH argues that because Wise's claim does not fit within the real estate exception, the Commonwealth Court's decision to uphold the entry of summary judgment in HACH's favor was proper.[6]

Having set forth the parties' arguments, we now turn to our analysis. Under the Act, the Commonwealth generally enjoys immunity from suit for damages arising out of negligent acts, subject to certain limits. 42 Pa.C.S. §§ 8521-22; *see also* 1 Pa.C.S. § 2310 (reaffirming sovereign immunity). In this regard, the Act most relevantly provides:

---

[6] The Commonwealth, represented by the Pennsylvania Office of Attorney General (OAG), has filed an *amicus curiae* brief on behalf of HACH similarly arguing that the Commonwealth Court's decision is correct.

**(a) Liability imposed.**--The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

***

**(4) Commonwealth real estate, highways and sidewalks.--**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).[7]

42 Pa.C.S. § 8522(a), (b)(4).

Accordingly, for liability to be imposed upon the Commonwealth for negligence, the injury must be recoverable under common law or statute if it were caused by a party not having the defense of sovereign immunity available, and it must arise from a category outlined in Section 8522(b), such as the real estate exception set forth above. Under that exception, "the injury must have resulted from a 'dangerous condition,'" and "the dangerous condition must be a condition 'of Commonwealth agency real estate.'" *Cagey v. Commonwealth*, 179 A.3d 458, 463 (Pa. 2018) (quoting 42 Pa.C.S. § 8522(b)(4)).

This case calls upon us to determine whether, in concluding that sovereign immunity barred Wise's claim, the Commonwealth Court properly applied the real estate

---

[7] Subsection 8522(b)(5), relating to potholes and other dangerous conditions of highways, is not at issue in this appeal.

exception.[8] We thus turn to a discussion of pertinent precedent addressing that exception, beginning with *Snyder*. In *Snyder*, a group of people had stopped their car along the berm of a road, which was next to a strip mine, in the middle of the night. Some members of the group exited the vehicle and, in an effort to avoid being hit by another vehicle, scrambled up an embankment and fell into the strip mine, resulting in serious injuries and death. *Snyder*, 562 A.2d at 308-09.

The property upon which the strip mine was operated was owned by a private individual and leased by Harmon Mining Company. The mining company had obtained a variance that allowed mining within 100 feet of the road, which PennDOT owned, controlled, and maintained. The variance also required the mining company to build the embankment, which came within 7 to 12 feet of the road's right-of-way at the points where the individuals fell, to prevent cars from driving into the pit. *Id.*

The plaintiffs in *Snyder* sued PennDOT alleging, *inter alia*, that PennDOT was negligent in permitting a dangerous condition to exist within its right-of-way by failing to warn the public of the existence of the pit, either by lighting or by erecting physical barriers or guardrails along the right-of-way. PennDOT moved for summary judgment on the basis that, because the dangerous condition of the strip mine did not exist on Commonwealth realty (given its location outside of PennDOT's right-of-way), PennDOT was immune from suit and the real estate exception did not apply. *Id.* at 309.

Interpreting the real estate exception, this Court observed that the exception is to be strictly construed given the General Assembly's intent to exempt the Commonwealth from immunity only in specifically defined situations. *Id.* at 311. The Court also opined that the unambiguous language of the exception, specifically the "critical word …'of,'"

---

[8] Accordingly, we do not address the issue, or any associated arguments raised by the parties, regarding whether Wise has met the first requirement for a waiver of sovereign immunity, *i.e.*, that the injury is recoverable under common law or statute against a party not having the defense of sovereign immunity available.

indicated that the "dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Id.* at 311 & n.5. We further held that immunity will be waived under the real estate exception "where it is alleged that the artificial condition or defect of the land itself causes an injury to occur." *Id.* at 312 (relying upon *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1124 (Pa. 1984) (interpreting the real estate exception to local agency immunity under the PSTCA, 42 Pa.C.S. § 8542(b)(3), to apply "only to those cases where it is alleged that the artificial condition or defect of the land itself causes injury, not merely when it facilitates injury by acts of others, whose acts are outside [the PSTCA's] scope of liability")).

The Court explained that the plaintiffs had asserted that the close proximity of the road to the strip mine, "and the unlit and deceptive appearance of the shoulder of the road presented an inherently dangerous condition." *Id.* Thus, we observed, "liability is not predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property which the Commonwealth knows or should reasonably know and takes no action to prevent any harm from occurring." *Id.* In rejecting this theory, we observed that the strip mine highwall "was some distance from the edge of PennDOT's right-of-way." *Id.* We also observed that "the absence of lighting so as to create a deceptive appearance of the shoulder of the road cannot be said to be either an artificial condition or a defect of the land itself." *Id.* at 312-313. Thus, we concluded that the real estate exception was inapplicable to the plaintiffs' cause of action and that PennDOT was entitled to the award of summary judgment in its favor.

Years later, this Court revisited the real estate exception to sovereign immunity in *Dean v. Commonwealth, Department of Transportation*, 751 A.2d 1130 (Pa. 2000), where we addressed whether the absence of a guardrail constitutes a dangerous condition of Commonwealth realty for purposes of the exception. In *Dean*, a truck fishtailed on a

snow-covered roadway, left the graveled portion of the roadway, traveled over an embankment, and overturned, resulting in serious injuries to the passenger-plaintiff. The plaintiff sued PennDOT, alleging that it was negligent in failing to shield the embankment properly with a guardrail and for failing to design, construct, and maintain a safe highway. In response, PennDOT argued that it was immune from suit because the lack of a guardrail merely facilitated the injury, rendering the real estate exception inapplicable. PennDOT further claimed that it was not liable for failing to erect a guardrail because it had no duty to guard against dangerous conditions off of the highway, pursuant to *Snyder*. *Id.* at 1131.

The *Dean* Court first concluded that PennDOT's "facilitation of the injury" theory failed because the claim presented to the Court was "one of concurrent causation rather than vicarious liability," as was the case in *Mascaro*, *supra* at page 12. *Dean*, 751 A.2d at 1133. The Court explained that *Mascaro* "did not absolve the government of liability in cases where a joint tortfeasor was involved," but instead merely indicated that the PSTCA precluded "imposition of liability upon a governmental unit based upon the theory of vicarious liability." *Id.* Thus, the Court rejected PennDOT's argument "that the real estate exception does not apply merely because [Dean] asserted that a concurrent cause of her injures was the accumulation of snow on the highway."[9] *Id.*

Then, applying *Snyder*, the Court held that "the Commonwealth's failure to erect a guardrail on the highway is not encompassed by the real estate exception to sovereign

---

[9] In this vein, we have repeatedly held that the Commonwealth can be held liable as a joint tortfeasor in the sovereign immunity and governmental immunity contexts. *See, e.g., Crowell v. City of Philadelphia*, 613 A.2d 1178, 1184 (Pa. 1992) (explaining that a "governmental unit can be subjected to liability despite the presence of an additional tortfeasor if the governmental unit's actions would be sufficient to preclude it from obtaining indemnity from another for injuries rendered to a third person"); *Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 1995) ("We recognize that our decision in *Crowell* reaffirmed the principle of joint liability by concurrent causes in the context of our governmental immunity statute, but we find these principles equally, if not more so, applicable in this case involving sovereign immunity.").

immunity." *Id.* at 1134. In doing so, we observed that, "[s]imilar to the absence of lighting and the deceptive appearance of the shoulder of the road in *Snyder*, the absence of a guardrail cannot be said to be a dangerous condition of the real estate that resulted in a reasonably foreseeable injury to [plaintiff]." *Id.* We further explained that "the lack of a guardrail does not render the highway unsafe for the purposes for which it was intended, i.e., travel on the roadway," and, thus, it was "irrelevant whether the guardrail is found to be a part of the state-owned highway." *Id.* We found "that the legislature did not intend to impose liability upon the government whenever a plaintiff alleged that his or her injuries could have been avoided or minimized, had the government installed a guardrail along side the roadway." *Id.* Based on the foregoing, we held that the grant of summary judgment in favor of PennDOT was proper.

Following *Dean*, this Court decided *Jones*. There, a plaintiff sued the Southeastern Pennsylvania Transportation Authority (SEPTA) in negligence for injuries she sustained when she slipped on rock salt on a train platform and fell. This Court concluded that Jones' claim did not fall within the real estate exception to immunity. In so doing, we observed that an "on/of distinction" pertaining to the real estate exception had developed in the case law over the years. Under this "on/of" dichotomy, immunity was waived if a plaintiff alleged that her injuries were caused by a dangerous condition "of" the location at issue, but was not waived if a plaintiff alleged that a substance or object was "on" the location. *Jones*, 772 A.2d at 442.

We rejected this "on/of" distinction in *Jones. Id.* at 443 (explaining further that the distinction was "problematic," "of little or no use," and "incorrect, because it works to exclude claims that fall within the parameters of the Act's real estate exception"). Guided by *Snyder*, the Court held that a claim for damages for injuries caused by a substance or an object on Commonwealth real estate will fall within the real estate exception so long as it alleges "that the dangerous condition 'derive[d], originate[d] or ha[d] as its source the

Commonwealth realty' itself." *Id.* (quoting *Snyder*, 562 A.2d at 311 & n.5). Stated another way, "the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair or design." *Id.* at 443-444. Applying these pronouncements to Jones' claim that salt on the train platform constituted a dangerous condition, the Court concluded that it did not satisfy the real estate exception because she failed to allege that "the salt derived or originated from or had as its source the train platform itself." *Id.* at 444. Thus, the Court concluded that summary judgment in SEPTA's favor was proper.

After *Jones*, we decided *Cagey*, another case addressing guardrails, where we held that the Commonwealth's immunity is waived under the real estate exception for "damages caused by dangerous guardrails affixed to Commonwealth real estate." *Cagey*, 179 A.3d at 460. Most relevantly for purposes of this appeal, we explained that the plaintiffs had sufficiently alleged that the guardrail at issue was a dangerous condition "in that it was defective, negligently-installed and uncrashworthy," and that the dangerous "boxing glove" end speared and penetrated the door resulting in significantly more severe injuries than if one of the plaintiffs had not been speared by the guardrail's end. *Id.* at 464. The Court additionally concluded that the plaintiffs sufficiently averred that the guardrail was a condition "of" Commonwealth realty as the word is used in Section 8522(b)(4) because the guardrail was affixed to the land. *Id.* at 465 ("Because the guardrail at issue was affixed to Commonwealth real estate, making it legally indistinguishable from the land upon which it was erected, the [plaintiffs] sufficiently alleged that the dangerous condition … was a condition 'of Commonwealth agency real estate'") (quoting 42 Pa.C.S. § 8522(b)(4)).

In rendering our decision, the *Cagey* Court distinguished the matter from *Dean*, noting that, in *Dean*, we "held only that a 'dangerous condition of Commonwealth agency

real estate' must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition." *Id.* at 166. We further rejected the notion that *Dean* required the defect alleged to make travel on the roadway itself dangerous and clarified that *Dean* was limited to its facts (*i.e.*, PennDOT's failure to install a guardrail). *Id.* at 466-67.[10]

The foregoing discussion makes the following clear with respect to whether the dangerous condition is "of" the Commonwealth realty for purposes of the real estate exception. *See* 42 Pa.C.S. § 8522(b)(4) (waiving immunity for "[a] dangerous condition of Commonwealth agency real estate"). To be "of" the Commonwealth realty as the word is used in Section 8522(b)(4), the dangerous condition "must derive, originate from or have as its source the Commonwealth realty." *See, e.g., Snyder*, 562 A.2d at 311. Indeed, a dangerous condition resulting from "a defect in the property or in its construction, maintenance, repair or design" will preclude application of immunity. *Jones*, 772 A.2d at 444. Further, the dangerous condition must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition, and that artificial condition or defect must be the cause, or a concurrent cause, of the injury. *See Snyder*, 562 A.2d at 312; *Dean*, 751 A.2d at 1133; *see also supra* at page 14 n.9.

Applying the above legal principles, we hold that the claim at issue is sufficient to invoke the real estate exception to sovereign immunity. Specifically, Wise has alleged the existence of a "dangerous condition," *i.e.*, insufficient outdoor lighting. In order to

---

[10] The Court additionally acknowledged the concern that, by operation of our holdings in *Dean* and *Cagey*, the Commonwealth would be incentivized to forego installation of guardrails for fear of being held liable for injuries caused by dangerous ones installed on its realty. *See Cagey*, 179 A.3d at 471, 473-74 (Wecht, J., concurring). Notably, we were unmoved by that concern, however, because we refused to "assume that the Commonwealth would act negligently, or even recklessly, for such a purpose." *Id.* at 466 n.6. We further declined to overrule *Dean* for several reasons, including that we had not granted review of that issue, we found *Dean* to be distinguishable from *Cagey*, and the parties had not presented developed advocacy on the matter. *Id.*

meet the exception, that "dangerous condition" of insufficient outdoor lighting "must derive, originate from or have as its source" the Commonwealth real estate. *Snyder*, 562 A.2d at 311. Here, in claiming that the insufficient outdoor lighting stems from the existence and position of the pole light and tree in relation to the sidewalk area of HACH's property, Wise has met this requirement. In other words, she has identified a dangerous condition that results from a "defect in the property or in its construction, maintenance, repair, or design."[11] *Jones*, 772 A.2d at 444. Wise further alleges that the dangerous condition of inadequate lighting caused her injuries. Thus, HACH cannot raise immunity as a matter of law to bar her claim.

In reaching this conclusion, we are careful to emphasize the precise nature of Wise's claim. It is not simply an assertion of an "absence of a condition," like the "absence of lighting" in *Snyder* and "absence of a guardrail" in *Dean*, which were determined to fall outside of the real estate exception. Rather, Wise alleges that insufficient artificial lighting existed on the Commonwealth realty because of the arrangement of the sidewalk, pole light, and tree, which are part of the real property. Stated differently, Wise alleges the presence of inadequate lighting on the Commonwealth realty, not the absence of lighting altogether. In this respect, Wise's claim is akin to the claim addressed in *Cagey*, which was based upon the presence of a defective guardrail as part of the Commonwealth realty, rather than the absence of one, and determined to fit within the real estate exception. *See Cagey*, 179 A.3d at 467 (holding that "[w]hen PennDOT installs a guardrail, sovereign immunity is waived if the agency's negligent installation and design creates a dangerous condition"). We likewise hold that, when an agency installs lighting

---

[11] Before this Court, HACH does not dispute that the sidewalk, pole light, and tree are themselves a part of the Commonwealth real estate.

as part of its real estate, "sovereign immunity is waived if the agency's negligent installation and design creates a dangerous condition."[12]  *Id.*

Turning to the lower courts' decisions, we conclude that they erred in several respects.  First, to the extent that the trial court and Commonwealth Court concluded that the real estate exception can apply to a claim of inadequate indoor lighting, but not a claim of inadequate outdoor lighting, they are incorrect.  So long as the dangerous condition is alleged to be "of" the Commonwealth real estate as required by the language of Section 8522(b)(4) and defined above (*i.e.*, the dangerous condition "derive[s], originate[s] from or ha[s] as its source the Commonwealth realty," *see Snyder*, 562 A.2d at 311), it is of no moment whether the condition is indoors or outdoors.[13]

---

[12] On this point, we acknowledge that the concern expressed by Justice Wecht in his concurring opinion in *Cagey*, *i.e.*, that our holding in that case would "create[] a perverse incentive for the Commonwealth to forego the installation of guardrails entirely" for fear of exposing itself to liability for injuries caused by those guardrails, can also be raised here. *Cagey*, 179 A.3d at 471 (Wecht, J., concurring). That is, it can be said that our holding today could incentivize the Commonwealth to forego the installation of lighting altogether rather than risk exposing itself to liability for negligence arising out of the presence of defective lighting conditions it creates on its property.  However, as the majority in *Cagey* opined, "we will not assume that the Commonwealth would act negligently, or even recklessly" for purposes of avoiding potential liability by foregoing the installation of lighting.  *Id.* at 466 n.6.  Additionally, like *Cagey,* this case does not require a reexamination of the distinction between the application of immunity in situations involving the absence of conditions versus the presence of defective conditions on Commonwealth realty given our analysis herein.

[13] We also reject HACH's suggestion that sovereign immunity cannot be waived under the Act for claims regarding dangerous lighting conditions generally because the Act does not contain a specific lighting exception like the PTSCA does.  While the two statutory schemes are to be read consistently, their language is not identical, and they are thus not interpreted in lockstep with each other.  *Jones*, 772 A.2d at 440, 443.  Accordingly, irrespective of how the PTSCA addresses lighting claims, we discern no reasoned basis to preclude a claim regarding dangerous lighting conditions from falling under the real estate exception to sovereign immunity, so long as the claim satisfies the exception's requirements as previously articulated by this Court and reaffirmed herein.

Further, we agree with Wise that, in concluding that the real estate exception was inapplicable, the Commonwealth Court erred in its characterization and treatment of her claim. Again, in reaching its conclusion, the court opined that: (1) there was no defect of the Commonwealth realty but for the natural darkness, which was not caused by the realty; (2) Wise had not alleged that the pole light or tree were themselves defective, that the tree directly injured her, or that the realty was defective during the daytime; and (3) Wise actually claimed that the Commonwealth failed to ameliorate a natural condition, which is not encompassed by the real estate exception. Respectfully, the court was mistaken in its reasoning.

As repeatedly noted herein, Wise alleges that the dangerous condition is insufficient lighting of Commonwealth realty, stemming from the existence and location of the light pole, tree, and sidewalk, which are part of HACH's property. Viewing Wise's claim as she alleges it, the Commonwealth Court's assertion that "there is no alleged defect" but for the natural darkness is inaccurate. In this regard, the presence of natural darkness would at best constitute a concurrent cause of Wise's injuries. *See Dean,* 751 A.2d at 1133 (rejecting PennDOT's contention "that the real estate exception does not apply merely because Appellee asserted that a concurrent cause of her injuries was the accumulation of snow on the highway"). Accordingly, the existing natural darkness is not fatal to her claim under the real estate exception; nor is it at all relevant that HACH obviously did not cause the existing natural darkness.

Additionally, while the items of the Commonwealth realty identified by Wise may not be defective insofar as they were not inoperable, damaged, or the like, they are nonetheless alleged to be a "defect in the property or in its construction, maintenance, repair, or design" by way of their arrangement. *Jones*, 772 A.2d at 444. Wise claims that this arrangement resulted in the dangerous condition of deficient lighting on the property, which is sufficient to invoke the real estate exception as we concluded above. Thus, it is

of no consequence that the individual items at issue (the sidewalk, light pole, and tree) were not themselves defective in the ways the lower court suggested.

Moreover, although the Commonwealth Court opined that HACH cannot be held liable for a failure to ameliorate the existing natural darkness, the court again made these observations without thoughtful analysis of Wise's actual claim. Specifically, the Commonwealth Court did not give proper credence to Wise's allegation that HACH's failure in this regard stemmed from "a dangerous condition of the Commonwealth real estate" (*i.e.*, insufficient artificial lighting of the property by way of the light pole, tree, and sidewalk). Thus, the Commonwealth Court was incorrect in holding that the claim could not be encompassed within the real estate exception on that basis.[14]

Having concluded that the lower courts erred in their treatment of Wise's claim, we highlight that this case is presented to us at the summary judgment stage. As such, our decision today does not equate to a determination that Wise will ultimately obtain relief on the merits. *See, e.g., Cagey,* 179 A.3d at 474) (Wecht, J., concurring) (explaining that the Commonwealth's waiver of immunity does not guarantee a plaintiff's recovery); *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 358 (Pa. 2018) (making the same observation in the context of the PSTCA). Indeed, Wise's claim must survive all stages of litigation, including by prevailing at trial. In this respect, we observe that whether the condition of the Commonwealth realty, in fact, is dangerous as alleged is generally for a jury to decide. *See Dean*, 751 A.3d at 1135 (explaining that "the issue of whether a dangerous condition exists is a question of fact for the jury to resolve"). We

---

[14] The Commonwealth Court further erred to the extent that it observed that Wise claimed that a defect existed because additional lighting should have been installed or a tree should have been removed. *Wise*, 212 A.3d at 1166. Specifically, the court shifted its focus away from the defect alleged to be the cause of Wise's injuries, instead hypothesizing measures that could be taken to remedy the defect, which was improper.

hold only that, as a matter of law, a claim of insufficient lighting deriving from the Commonwealth realty falls within the real estate exception to sovereign immunity.[15]

Based on the foregoing, we conclude that the Commonwealth Court erred in affirming the trial court's award of summary judgment in favor of HACH on the basis that the real estate exception did not apply to Wise's claim. Accordingly, we reverse the order of the Commonwealth Court and remand the matter for further proceedings consistent with this opinion.

Justices Saylor, Todd and Mundy join the opinion.

Justice Donohue files a concurring opinion in which Justice Wecht joins.

Justice Wecht files a concurring opinion in which Justice Dougherty joins.

---

[15] As a last point, we observe that, in their briefing to this Court, Wise and the PAJ propose specific standards to be used for application of the real estate exception and request that this Court adopt them in order to allay what they characterize as confusion existing in this area of the law. However, we view this case largely as one extending settled pronouncements regarding the real estate exception, as discussed herein, to a claim involving a novel factual scenario for purposes of determining that, as a matter of law, the exception encompasses that factual scenario. Thus, insofar as Wise and the PAJ seek adoption of a legal standard for application of the real estate exception that is "new" or goes beyond what we have outlined herein, we decline to do so.