IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Arthur Logan | : **CASES CONSOLIDATED** |
| | : |
| v. | : No. 989 C.D. 2024 |
| | : |
| Philadelphia Housing Authority, | : |
| | : |
| Appellant | : |
| | |
| Arthur Logan, | : |
| | : |
| Appellant | : |
| | : |
| v. | : No. 990 C.D. 2024 |
| | : Argued: October 9, 2025 |
| Philadelphia Housing Authority | : |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                             FILED:  February 13, 2026

Presently before the Court for disposition are cross-appeals filed by the Philadelphia Housing Authority (Authority) and Arthur Logan (Logan) from an order entered on June 17, 2024, in the Philadelphia County Court of Common Pleas (trial court) entering judgment against the Authority and molding a jury's verdict to $250,000 pursuant to Section 8528(b) of the Judicial Code, 42 Pa. C.S. §8528.  For the reasons that follow, we affirm.

## Background

In November of 2023, Logan filed a complaint in the trial court against the Authority alleging that he sustained personal injuries when he fell on an exterior

stairway at the Authority's Hill Creek Apartment Complex (apartment complex). Specifically, the complaint alleged that

> [o]n or about May 14, 2022, [Logan] was lawfully walking down the stairs of [the Authority's] property . . . when he was caused to trip and fall due to an uneven, unlevel cracking and/or deteriorating condition of the stairs and/or improper, inadequate, and defective lighting which caused him to sustain serious and permanent injuries more fully set forth herein.

Complaint, 11/23/2022, at ¶7, Reproduced Record (R.R.) at 30a.

The Authority raised a number of defenses in its answer and new matter, including that Logan's claims against the Authority are barred by the doctrine of sovereign immunity and that Logan failed to plead an exception to sovereign immunity.[1] Answer and New Matter, 12/5/2022, at ¶¶30-31, R.R. at 42a.

Following the close of discovery and prior to trial, the Authority filed a motion *in limine* seeking to: (1) preclude Logan from relying upon photographs taken by his counsel weeks after the incident; and (2) preclude any claim by Logan that the Authority had a duty to provide lighting, breached a duty to provide lighting, or that there was a defect in the exterior steps themselves. Authority's Omnibus Motion *In Limine*, 12/4/2023, R.R. at 46a. The trial court denied the motion *in limine*

---

[1] Article I, section 11 of the Pennsylvania Constitution provides, in relevant part, that "[s]uits may be brought against the Commonwealth in such a manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, §11. In turn, the General Assembly has declared "that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. §2310. This immunity is not, however, unlimited. The General Assembly has enumerated specific exceptions to sovereign immunity in what is commonly known as the Sovereign Immunity Act, 42 Pa. C.S. §§8501-8564. *See* 42 Pa. C.S. §8522(b) (listing 10 exceptions to Commonwealth parties' sovereign immunity).

in its entirety. Trial Court Order, 2/29/2024, R.R. at 235a. The matter proceeded to trial.[2]

Logan testified that around 9:30 or 10:00 p.m. on May 14, 2022, he went to visit a friend, Geneva Pace, who lived at the Authority's apartment complex. R.R. at 650a-51a. When he arrived at the apartment, the lighting conditions were "dark." *Id.* at 652a. As he guided himself up the exterior steps to the apartment, he held onto the railing. *Id.* at 652a. Logan stated that he stayed for around an hour. *Id.* at 651a. When he was leaving the premises and coming back down the exterior stairway, he fell on the last step and suffered a knee injury. *Id.* at 654a. Logan initially sought treatment at the VA hospital but ultimately went to a different hospital where he eventually underwent knee surgery. *Id.* at 655a, 658a. Following surgery, Lincoln received four or five weeks of physical therapy. *Id.* at 661a. Logan related how the injury has negatively impacted his day-to-day life. *Id.* at 663a-67a.

During cross-examination, Logan was shown a photograph of the premises (Plaintiff's Exhibit P-12),[3] and the following colloquy took place.

> [Authority's Counsel:] And I just want to be clear, in this picture, you said, I think, because of a flash or something when you were there, when you encountered the conditions on the night of the accident, it didn't look like this?
>
> [Logan:] No. That's way too bright. All of that was dark.
>
> [Authority's Counsel:] In other words, in this picture, you can see, like, the flowers, you can see the grass - -
>
> [Logan:] Yeah. No. You couldn't see nothing like that.

---

[2] For ease of discussion, we set forth the witnesses' testimony out of order.

[3] Exhibit P-12 can be found on page 251a of the Reproduced Record.

3

[Authority's Counsel:] -- a dark shadow here?

[Logan:] No. The shadow went all the way up to the top of the steps, even where that flat is and then down. So I had to walk down them steps and then walk to the edge towards the next one to walk all the way down.

[Authority's Counsel:] So unlike what you see here, in the pictures that were provided, this entire area was much darker?

[Logan:] Much, much darker.

R.R. at 671a-72a.

Logan further stated:

[Authority's Counsel:] There was no lighting on the steps themselves at all, correct?

[Logan:] No, none.

[Authority's Counsel:] So you have one contention in this case that you fell due to some problem with the stairs and then --

[Logan:] At the time, I didn't know. It had to be one of two. I knew that I hit -- when I thought I was on the bottom step, I hit the edge of the step, the first step, and that's when I tripped and fell. I could not see it.

[Authority's Counsel:] I want to be clear about this. Your one contention is there was some defect in the steps, correct?

[Logan:] Yes.

[Authority's Counsel:] And your other contention is that there should have been lighting on the steps themselves?

[Logan:] Yes.

R.R. at 673a-74a.

4

During cross-examination, Logan was also questioned about his prior deposition testimony.

> [Authority's Counsel:] And I asked you, unlike -- like your testimony today. I said, Mr. Logan, was there anything wrong with the steps themselves, Page 53, Line 6 through 10.
>
> Do you remember me asking you about the steps themselves?
>
> [Logan:] No, sir. Refresh me, please.
>
> [Authority's Counsel:] I appreciate that. I said, Page 53, Is it your contention that you fell because the steps, at the bottom of the stairwell, were dark and you misapprehended or did not see the last step because of darkness? Answer, Yes. Question, All right. Is there anything at all that was wrong with the steps themselves? In other words, they were broken, they were loose, anything like that? Answer, No.
>
> Is that correct?
>
> [Logan:] Yes.

R.R. at 675a-76a.

Logan also presented the testimony of Greg Thorum (Thorum) as on cross-examination. Thorum testified that he had been an Authority Building Maintenance Superintendent (Maintenance Superintendent) for 30 years. R.R. at 586a. Thorum indicated that the Authority is a state agency that manages and owns real estate, with approximately 76,000 tenants. *Id.* Thorum stated after the incident he went to the apartment several times to "ascertain the safeness of the steps . . . ." *Id.* at 589a. His visits occurred in the daytime. *Id.* Thorum admitted, however, that

5

Logan alleged he fell at night. Thorum was shown Plaintiff's Exhibit P-2,[4] a daylight photograph of the premises. Logan's counsel then asked:

> [Logan's Counsel:] Do you see the wall on the side of this, the steps?
>
> [Thorum:] Yes, the retaining wall. Yes.
>
> [Logan's Counsel:] Now, this wall, depending on where the light is coming from, it throws shade on the steps --
>
> [Authority's Counsel:] Objection. This isn't a daylight accident with the sun.
>
> [The Court:] Overruled.
>
> [Logan's Counsel:] This wall to the side, it throws shade on to the steps?
>
> [Thorum:] Well, I mean, of course, depending upon where the sun is going to rise. Yes, of course.
>
> [Logan's Counsel:] Yes, absolutely. We can agree, then, that depending on where the sun is, the sun will throw shade on the steps?
>
> [Thorum:] Yes, to some degree or another. I don't know how much shade. I couldn't make that determination.
>
> [Logan's Counsel:] But just based on the picture - - I'm not asking you to speculate. But just based on the picture, the steps are shaded as a result of the wall to the side of the steps.
>
> Can we agree on that?
>
> [Thorum:] In the photograph, yes.

*Id.* at 589a-90a.

---

[4] Exhibit P-2 can be found on page 243a of the Reproduced Record.

6

Thorum testified that following his discovery deposition he went to visit the apartment at night in December of 2023, but the tenant, Ms. Pace, was putting up Christmas lights. R.R. at 591a-92a. Thus, on the night of his visit, the steps were visible due to the ambient lighting from the Christmas lights. *Id.* at 617a-18a. Thorum was then shown Plaintiff's Exhibit P-3,[5] a photograph of the premises that was taken at night. Thorum testified that in this photograph, he could not see the bottom of the steps because of a shadow. *Id.* at 594a. When asked if the shadow was caused by the retaining walls, Thorum stated, "It could be that, and also, there's a trash can there that, as I said, I think, in my deposition, may also be blocking light from whatever source there is." *Id.* Thorum was then shown a nighttime photograph of the premises taken from a different angle (Plaintiff's Exhibit P-5).[6] Thorum admitted that in Exhibit P-5, he could not see the steps. *Id.* at 597a.[7] Over the Authority Counsel's objection, Thorum was asked if the retaining walls were causing the shadow. Thorum responded:

> It's hard to tell. This is kind of a grainy photograph. It's not the best quality. So looking at the steps from this photograph, it would appear there's a shadow from the wall. So whether or not someone coming down the steps would be able to see that or not, I can't speak to that.

*Id.* at 598a. Following the testimony of his medical expert, Logan rested.

In its defense, the Authority also presented Thorum as a witness. Thorum stated that in his capacity as a Maintenance Superintendent, he performed

---

[5] Exhibit P-3 can be found at page 244a of the Reproduced Record.

[6] Exhibit P-5 can be found at page 245a of the Reproduced Record.

[7] Later in his testimony, Thorum was shown a photograph depicting the steps from yet another angle, *i.e.*, from the left. (Plaintiff's Exhibit P-6, R.R. at 246a). Thorum again admitted that he could not see the bottom of the steps in the photograph. *Id.* at 602a-03a.

7

accident investigations, dealt with safety concerns at other sites, and trained maintenance employees in Authority procedures including documentation, inspections and applicable codes. R.R. at 627a.

Thorum testified that he performed an investigation at the request of the Authority's counsel. Specifically, Thorum went to the premises to identify any issue with the steps. He also pulled maintenance records for the site to see if any tenants in the building had complained about lighting issues or the steps prior to Logan's fall. R.R. at 628a-29a. Thorum confirmed there were no complaints about the premises. *Id.* at 630a.

Thorum also testified concerning the inspection history of the property. Thorum explained that the U.S. Department of Housing and Urban Development (HUD) performs an annual inspection of Authority properties to make sure they are "in good repair." R.R. at 630a. Based on Thorum's review of the inspection and maintenance history of the premises, he concluded there were no complaints or defects noted at any time prior to Logan's incident. *Id.* at 631a. Thorum also related that HUD had never cited the Authority for any violation of lighting or safety standards at the complex. *Id.* at 632a.

Thorum then testified concerning inspections by the Philadelphia Department of Licensing and Inspections (L&I). He confirmed that L&I had never issued a violation for any lighting deficiencies for the exterior stairwells at the property. R.R. at 632a-33a. Thorum related that there are no specific lighting regulations for exterior stairwells in the Philadelphia Property Maintenance Code,[8]

---

[8] The Philadelphia Property Maintenance Code may be accessed at: https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-271349 (last visited February 12, 2026).

8

although there are regulations related to building egress and access, *i.e.*, a multiple dwelling unit must have a light over each entrance from the street. *Id.* at 635a. Thorum agreed that the Authority had never provided illumination on the exterior steps since the complex was built in 1938. *Id.*

Ultimately, the jury entered a verdict in favor of Logan in the amount of $2,290,000. The trial court then reduced the verdict amount to $1,488,500 based on Logan's 35% comparative negligence. Trial Work Sheet, 2/28/2024, R.R. at 238a.

Thereafter, the Authority filed a motion for post-trial relief asserting that: (1) it was entitled to judgment notwithstanding the verdict (JNOV) because it had asserted the defense of sovereign immunity throughout the entirety of the action and Logan could not show that his claim fell under the real estate exception to sovereign immunity pursuant to Section 8522(b)(4) of the Judicial Code, 42 Pa. C.S. §8522(b)(4);[9] (2) in the event the trial court did not enter a JNOV in favor of the Authority, several errors warranted a new trial; and (3) in the event the trial court

_____

[9] Per the Authority:

> [Logan] admitted there was no defect on the exterior staircase at issue, and that his sole contention on liability was that [the Authority] should have provided lighting for the exterior staircase. In other words, [Logan] asserts that the *absence* of lighting on the exterior staircase was the "dangerous condition" of the [Authority's] property. This precise assertion has repeatedly been rejected by the Pennsylvania Supreme Court—the absence of a condition, *i.e.*, [the Authority] not installing or providing lighting on the staircase, *cannot* constitute a "dangerous condition" of the staircase, which is necessary for the real estate exception to apply. Therefore, [the Authority] is immune from suit.

Authority's Motion for Post-Trial Relief, 3/8/2024, ¶3, R.R. at 282a (emphasis in the original).

9

did not enter a JNOV or grant a new trial, the Authority was entitled to have the verdict molded to the $250,000 damage limitation set forth in 42 Pa. C.S. §8528. Authority's Motion for Post-Trial Relief, ¶¶1-5. The trial court granted the Authority's motion to mold the verdict. Trial Court Order, 6/14/2024, R.R. at 416a.[10] The Authority's other requests for relief were denied. *Id.*

Logan filed a notice of appeal on July 9, 2024. The Authority filed its cross-appeal on July 17, 2024.[11] At the trial court's direction, the parties filed their respective statements of errors complained of on appeal. *See* Logan's Statement of Errors Complained of on Appeal, 7/23/2024, R.R. at 431a; Authority's Statement of Errors Complained of on Appeal, 8/15/2024, R.R. at 441a. The trial court then issued its opinion pursuant to Pa.R.A.P. 1925(b). Trial Court Opinion, 9/24/2024, R.R. at 527a. This matter is now ripe for our disposition.[12]

**Authority's Request for JNOV**

With regard to its denial of the Authority's request for JNOV, the trial court observed that

---

[10] The order was entered on the docket on June 17, 2024.

[11] Both notices of appeal sought review by the Superior Court. By orders dated August 2, 2024, and August 5, 2024, the cases were transferred to this Court. In a December 6, 2024 order, we *sua sponte* consolidated the parties' appeals.

[12] Of note, the Authority, as the Designated Appellant, raises two issues for our review: (1) whether the Authority is entitled to a JNOV because the absence of lighting on an exterior staircase cannot constitute a dangerous condition of Commonwealth real property necessary to invoke the real estate exception to sovereign immunity; and, in the alternative; and (2) whether the trial court erred in denying its request for a new trial. The Authority acknowledges that Logan's cross-appeal seeks to declare the statutory damage cap imposed by 42 Pa. C.S. §8528 unconstitutional; thus, the Authority asserts that it only seeks review of the denial of its request for a new trial if this Court (1) denies its request for JNOV on its sovereign immunity defense (2) grants Logan's cross-appeal and reverses the molding of the verdict to the statutory cap. Authority's Brief at 4, n.1.

10

[Logan] alleged that concurrent conditions caused his fall: inadequate lighting and a defect in the structure of the stairs and its retaining walls that partially blocked the available lighting from reaching the bottom steps, causing a dangerous condition. [Logan] does not allege a defect in the actual steps themselves. [The Authority] claims that sovereign immunity precludes this claim . . . . Specifically, [the Authority] claims that [Logan] failed to prove that his claim fell within the real estate exception . . . [42 Pa.C.S. §] 8522(b)(4).

Trial Court Opinion at 2 (citation omitted).

The trial court rejected this assertion, stating:

Interpretation of "a dangerous condition of Commonwealth agency real estate" has been an oft-raised issue for the courts. [Logan] argues that his evidence established "that the design, installation, and location of the masonry structure (retaining walls) abutting the exterior staircase combined with the positioning of the lighting on the property was the cause of [Logan's] injuries." ([Logan's] Response to [the Authority's] Post-[t]rial Motion, [¶]9). . . . [Logan] stated there was a shadow on the stairway that made it totally dark. . . . The defect in [the Authority's] property, according to [Logan's] evidence, is not merely the absence of lighting near the stairs, but that the available light was shadowed by the retaining walls on each side of the stairway.

Trial Court Opinion at 7 (citations to transcript omitted).

The trial court noted:

[The Authority] frames the liability issue as one that creates a requirement that [the Authority] provide exterior lighting for the staircase where no such requirement exists. According to [the Authority], [Logan's] claim does not fall within the real estate exception " . . . because the exception can only apply where the dangerous condition at issue *derives or originates from the property itself*—here, the external staircase[.]" (*Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989). ([The Authority's] Brief in Support of Post-Trial Motion [at 10])[] (emphasis added). Thus,

11

according to [the Authority], whether it should have provided exterior lighting at the stairway is not a claim that falls within the real estate exception.

Trial Court Opinion at 7 (emphasis in original).

The trial court reasoned that the allegations in the instant action were very similar to those in *Wise v. Huntingdon County Housing Development Corp.*, 249 A.3d 506 (Pa. 2021). The trial court stated:

[The Authority's] argument that this is an issue of law that should be decided in its favor is mistaken. Whether by a motion for summary judgment, a motion for a directed verdict, or a motion for JNOV, the issues raised are factual and properly submitted to the jury. [The Authority] asked for, and received, additional language to the Court's instructions to the jury on the definition of negligence taken from the language in *Wise*.[13] . . . If the jury believed, based on all of the admitted evidence, that there was a defect in the property because the retaining walls caused a dangerous condition by blocking light from the porch from reaching to the bottom step, the real estate exception applies. The verdict is supported by the evidence and does not shock the conscience.

Trial Court Opinion at 10.

## Discussion

The Authority first argues that the trial court erred in denying its motion for JNOV. Our review of the trial court's order granting or denying an appellant's post-trial motion for JNOV is limited to determining whether the trial court abused

---

[13] The trial court instructed the jury as follows:

In a case involving [the Authority] specifically, the injury suffered by the plaintiff must have resulted from a dangerous condition and the dangerous condition must be a condition of the Commonwealth agency's real estate.

R.R. at 768a.

12

its discretion or committed legal error.  *See Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 924 (Pa. Cmwlth. 2000).  The *Mellon* Court observed:

> In reviewing a motion for [JNOV], "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Broxie v. Household Finance Company*, 372 A.2d 741, 745 (Pa. 1977). *See also, Metts v. Griglak*, 264 A.2d 684 (Pa. 1970) and *Gonzalez v. United States Steel Corp.*, 398 A.2d 1378 (Pa. 1979).  Moreover, [a JNOV] should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner.  *See Atkins v. Urban Redevelopment Authority of Pittsburgh*, 414 A.2d 100 (Pa. 1980) and *Stewart v. Chernicky*, 266 A.2d 259 (Pa. 1970). Further, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations."  *Brown v. Shirks Motor Express*, 143 A.2d 374, 379 (Pa. 1958).
>
> There are two bases upon which [a JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, *Tremaine v. H.K. Mulford Co.*, 176 A. 212 (Pa. 1935), and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, *Cummings v. Nazareth Borough*, 233 A.2d 874 (Pa. 1967).  With the first[,] a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Mellon*, 760 A.2d at 924-25 (quoting *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992)).

13

Here, the Authority asserts, the only exception to sovereign immunity potentially applicable to this action is the real estate exception found at 42 Pa. C.S. §8522(b). This exception provides:

> **b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> . . . .
>
> **(4) Commonwealth real estate, highways and sidewalks.--**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons . . . .

42 Pa.C.S. §8522(b)(4).

The analysis in this case hinges on the language "a dangerous condition of Commonwealth agency real estate." The Authority notes that for Logan's claim to fall within the real estate exception, "a dangerous condition must derive, originate from or have as its source the Commonwealth realty." Authority's Brief at 16 (quoting *Snyder*, 562 A.2d at 307). Further, it is Logan's burden to establish the dangerous condition of the real estate. *Id.* (quoting *Stein v. Pennsylvania Turnpike Commission*, 989 A.2d 80, 84 (Pa. Cmwlth. 2010)).

The Authority observes that while Logan initially claimed that he fell on the exterior staircase at issue "due to uneven, unlevel, cracking and/or deteriorating condition of the stairs and/or improper, inadequate, and defective lighting[,]" Authority's Brief at 17 (quoting Logan's Complaint, ¶7), he later

14

conceded at his deposition that the staircase was not defective and that the only dangerous condition pertained to the "inadequate lighting" of the staircase. *Id.* (citing the Authority's Omnibus Motion *in Limine* at ¶27, R.R. at 62a). The Authority contends that Logan's theory of "inadequate lighting" was based on the Authority's failure to provide "*any* lighting on the stairs—*i.e.*, a complete absence of lighting." *Id.* (emphasis in original). In this regard, the Authority looks to Logan's testimony at trial that there was no lighting on the steps at all when the incident occurred. *Id.* (quoting Logan's testimony, R.R. at 673a, 676a).

The Authority asserts that whether it "*should have* provided lighting on the exterior staircase cannot bring [Logan's] claim within the real estate exception . . . because the exception can only apply where the dangerous condition derives or originates from the property itself—here, the exterior staircase." Authority's Brief at 18 (emphasis in the original). The Authority cites *Wise* for the proposition that the absence of lighting/natural darkness cannot create a defect as a matter of law. Further, the Authority analogizes the facts of the instant case to those in *Dean v. Department of Transportation*, 751 A.2d 1130 (Pa. 2000), where our Supreme Court held that the absence of a guardrail could not fall within the real estate exception to sovereign immunity.

The Authority argues:

> [A]s confirmed by the only two fact witnesses in this case, there was *no* artificial light identified which caused purported inadequate lighting conditions. [Logan] confirmed that there was *no* lighting on the stairs whatsoever (R.[R. at] 673a . . .), and Mr. Thorum testified that [the Authority] has never once provided lighting for the staircase "since 1938 when they were built." (R.[R. at] 635a . . .). Second, the theory regarding a purported shadow created by the retaining wall was concocted purely by [Logan's] *counsel* through the use of misleading

15

photographs—introduced over [the Authority's] counsel's objections—which did not accurately depict the lighting conditions on the evening of [Logan's] fall. There was *no* testimony supporting counsel's argument, or the trial court's finding in its 1925 Opinion, that [Logan's] fall was caused by a shadow created by the retaining wall. [Logan] testified that the *entire staircase* was dark—as opposed to just a few steps at the bottom next to the retaining wall— and that the photographs entered into evidence did *not* accurately depict the conditions that were present the night of his fall . . . .

Authority's Brief at 22-23 (emphasis in original).

Logan counters that his claim fits squarely within the parameters of *Wise* as he "showed that the positioning of the lighting on the property failed to illuminate the steps." Logan's Brief at 31. Logan asserts that, similar to *Wise*, his claim "is based on the inadequacy of lighting because of the location of existing lights and obstructions, such as the walls adjacent to the steps." *Id.*

To the extent the Authority argues that this is an absence of lighting case, Logan maintains that the authority is "playing dumb." Logan's Brief at 32. While the Authority is indeed correct that there are no light fixtures affixed to the steps themselves, *Wise* does "not demand that the light be so close to the site of the accident." *Id.* Per Logan, *Wise* dictates that "when an agency installs lighting as part of its real estate, 'sovereign immunity is waived if the agency's negligent installation and design creates a dangerous condition.'" *Id.* (quoting *Wise*, 249 A.3d at 518).

Logan notes that here, as in *Wise*, there are lights near the steps. Logan emphasizes that Thorum testified concerning the extremely bright nature of the lights that were present at the building that Logan was trying to enter. Logan argues "the problem was that, due to the location of lighting and relevant obstructions, the site of the accident was not illuminated. Since [the Authority] installed lights near

16

the accident site, this case is about inadequate—not absent—light." Logan's Brief at 33. Logan points to the photographs he introduced at trial and intimates that any claim there was a complete "absence" of lighting is "absurd." *Id.*

Insofar as the Authority argues it is immune from suit because the cause of the accident was "nighttime darkness," Logan asserts that it is mistaken. Under the Sovereign Immunity Act, a plaintiff merely needs to show that the "artificial condition or defect [is] . . . a concurrent cause [] of the injury." Logan's Brief at 35 (quoting *Wise*, 249 A.3d at 517). In *Wise*, Logan observes, the Court explained that natural darkness would at best constitute a concurrent cause of Wise's injuries and that inadequate lighting could also be a different, concurrent cause. Thus, the existing natural darkness was not fatal to the *Wise* plaintiff's claim under the real estate exception.

Viewing, as we must, the evidence presented at trial in a light most favorable to Logan and giving him the benefit of every reasonable inference of fact arising therefrom, we do not believe that the trial court erred in denying the request for JNOV. Under the circumstances presented here, it is apparent that the Authority is positing an overly narrow interpretation of what constitutes a negligent design of property and, in turn, a dangerous condition. In this regard, the Authority focuses only on the lack of lighting on exterior steps, making this an "absence of lighting case." To the contrary, we agree with Logan that the focus should fall on the design of the property in the immediate area of the incident, *i.e.*, the area surrounding Ms. Pace's apartment, the apartment's front porch area *as well as* the exterior steps and nearby retaining walls. In so doing, we conclude that the facts of this case are in line with *Wise*, an inadequate lighting case.

17

In *Wise*, the appellant filed a negligence action against the Housing Authority of the County of Huntingdon (the authority), alleging that, at approximately 12:10 a.m. on May 9, 2013, she tripped and fell while walking on a sidewalk in the Chestnut Terrace public housing complex. *Wise*, 249 A.3d at 509. The appellant claimed that her fall was caused by insufficient outdoor lighting of the sidewalk area due to the location of a pole light and a tree obstructing the light provided. *Id.* The authority filed for summary judgment asserting, *inter alia*, that the appellant's claim was barred by sovereign immunity. The authority argued that the only exception to sovereign immunity applicable to the appellant's claim was the real estate exception, which requires that a dangerous condition "derive, originate from or have a[s] its source the Commonwealth realty." *Id.* The authority asserted that, as acknowledged by the appellant, there was no defect in the sidewalk, and that "[a]llegedly insufficient lighting is not a condition or defect of the land itself." *Id.* Thus, the authority maintained that the appellant's claim could not serve as a basis to waive sovereign immunity.

In response, the appellant alleged that genuine issues of material fact existed and challenged the authority's claim that sovereign immunity barred her claim of insufficient lighting because, as a matter of law, insufficient lighting did not constitute a condition or defect of the land itself under the real estate exception. *Wise*, 249 A.3d at 509. Citing the cases of *Peterson v. Philadelphia Housing Authority*, 623 A.2d 904, 906 (Pa. Cmwlth. 1993) and *Floyd by Floyd v. Philadelphia Housing Authority*, 623 A.2d 991, 903 (Pa. Cmwlth. 1993), the appellant argued that the question of whether inadequate lighting constitutes a defect in the property is a question of fact for the jury. *Id.*

The trial court granted the authority's motion for summary judgment. On appeal, this Court affirmed, holding that because the lack of exterior light naturally occurs at night, the appellant could not contend that the nighttime darkness was caused by the Commonwealth realty. *See Wise v. Huntingdon County Development Corp.*, 212 A.3d 1156, 1167 (Pa. Cmwlth. 2019). In reaching this determination, we emphasized that the significantly distant pole light and the tree situated between the pole light and the location of appellant's fall did not create the already existing natural darkness. *Id.* at 1167. "There was no artificial change to the Commonwealth's realty from the day to nighttime." *Id.* We stated: "Given the earth's natural rotation from light to darkness, the alleged dangerous condition – darkness – did not "derive, originate from or have as its source the Commonwealth realty." *Id.* (quoting *Snyder*, 562 A.2d at 311).

In her appeal to the Pennsylvania Supreme Court, the appellant argued that Commonwealth Court mischaracterized her claim. The Supreme Court wrote:

> According to [the appellant], she alleges that the "dangerous condition" was "the combination of the lamppost and tree creating a shadow on a portion of sidewalk where [she] fell." [The appellant's] Brief at 16. She further claims that the lamppost, pathways, and tree are fixtures of the property and, thus, the dangerous condition alleged is "of" the property. *Id.* [The appellant] emphasizes that the Commonwealth "conceived, designed and built" an apartment complex on its land, making decisions about things such as pathways, landscaping, grounds, and lighting. *Id.* at 17. According to [the appellant], the Commonwealth fashioned its real estate in a manner that did not provide pedestrians legally on the property "a safe area on which to walk due to the shadow *created* by" the Commonwealth. *Id.* (emphasis in original).

*Wise*, 249 A.3d at 512. The Supreme Court agreed and, following an exhaustive review of precedent discussing the real estate exception, reversed, holding that the appellant's claim was sufficient to invoke the real estate exception. The Supreme Court stated:

> [The appellant] has alleged the existence of a "dangerous condition," *i.e.*, insufficient outdoor lighting. In order to meet the exception, that "dangerous condition" of insufficient outdoor lighting "must derive, originate from or have as its source" the Commonwealth real estate. *Snyder*, 562 A.2d at 311. Here, in claiming that the insufficient outdoor lighting stems from the existence and position of the pole light and tree in relation to the sidewalk area of [the authority's] property, [the appellant] has met this requirement. In other words, she has identified a dangerous condition that results from a "defect in the property or in its construction, maintenance, repair, or design." *Jones* [*v. Southeastern Pennsylvania Transportation Authority*], 772 A.2d [435, 444 (Pa. 2001).] [The appellant] further alleges that the dangerous condition of inadequate lighting caused her injuries. Thus, [the authority] cannot raise immunity as a matter of law to bar her claim.

*Id.* at 517-18.

Guided by *Wise*, we conclude that contrary to the Authority's assertions, Logan is not merely alleging an absence of light; rather, like the appellant in *Wise*, Logan claims that the "dangerous condition" of insufficient outdoor lighting originated from the Commonwealth realty based on the defective design of the property, i.e., the failure to adequately light an outdoor staircase bookended by retaining walls that the Authority knew individuals of all ages and physical abilities would utilize day and night. These claims were sufficient to invoke the real estate exception to sovereign immunity, and the trial court did not err in submitting this matter to the jury.

20

## Constitutionality of the Damages Cap

Turning to Logan's appeal, he raises the singular argument that the damages cap found in Section 8528(b) of the Judicial Code, 42 Pa.C.S. §8528(b), is unconstitutional.[14]  At the outset, Logan acknowledges that this Court "should not find the [d]amages [c]ap unconstitutional as the law stands today . . . ."  Logan's Brief at 57.  Logan concedes that he is raising substantively the same arguments as those raised in *Zauflik v. Pennsbury School District*, 104 A.3d 1096 (Pa. 2014) — a case in which our Supreme Court rejected a challenge to the damages cap.  Logan notes, however, that the Supreme Court is once again considering the constitutionality of the damages cap in the case of *Freilich v. Southeastern Pennsylvania Transportation Authority*, (Pa. Cmwlth., No. 327 C.D. 2022, filed July 6, 2023), *petition for allowance of appeal granted*, (Pa., No. 10 E.A.P. 2024, March 11, 2024).  *Freilich* was argued before the Court on March 4, 2025, but has not yet been decided.

Because *Zauflik* remains binding precedent, we must reject Logan's constitutional argument.  Nevertheless, the argument has now been preserved in the event Logan seeks further appeal with the Supreme Court.[15]

---

[14] Specifically, Section 8528(b) limits damages recoverable against the Commonwealth under Pennsylvania law to $250,000.

[15] In light of our holding, we will not address SEPTA's request for a new trial.

21

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Arthur Logan | : **CASES CONSOLIDATED** |
| | : |
| v. | : No. 989 C.D. 2024 |
| | : |
| Philadelphia Housing Authority, | : |
| | : |
| Appellant | : |
| | : |
| Arthur Logan, | : |
| | : |
| Appellant | : |
| | : |
| v. | : No. 990 C.D. 2024 |
| | : |
| Philadelphia Housing Authority | : |

**O R D E R**

AND NOW, this 13<u>th</u> day of <u>February</u>, 2026, the order of the Philadelphia County Court of Common Pleas entered on June 17, 2024, entering judgment against the Philadelphia Housing Authority and molding a jury's verdict to $250,000 pursuant to Section 8528(b) of the Judicial Code, 42 Pa. C.S. §8528, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Arthur Logan | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 989 C.D. 2024 |
| | : | |
| Philadelphia Housing Authority, | : | |
| Appellant | : | |
| | | |
| Arthur Logan, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 990 C.D. 2024 |
| | : | Argued:  October 9, 2025 |
| Philadelphia Housing Authority | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WALLACE                                    FILED:  February 13, 2026

I respectfully dissent.  Our Supreme Court's reasoning in *Wise v. Huntingdon County Housing Development Corp.*, 249 A.3d 506 (Pa. 2021), controls the outcome of this appeal.  In *Wise*, the Supreme Court held the real estate exception to sovereign immunity applied to a plaintiff who tripped and fell on a sidewalk at a public housing complex.  *Id.* at 509.  The plaintiff alleged she fell because of "insufficient outdoor lighting of the sidewalk area."  *Id.*  Significantly, the plaintiff's claim was not merely that there should have been additional lighting at the complex, but that a tree blocked

a pole light near where she fell, which created a dangerous shadow. *Id.* at 512. The Supreme Court was careful to distinguish between claims alleging the presence of a dangerous condition, which fall within the real estate exception, and claims alleging the absence of a condition, such as the "absence of lighting," which do not fall within the real estate exception. *Id.* at 518.

Here, Arthur Logan (Logan) presented photographs at trial, showing the stairs where he fell, which appeared to depict a dark area or shadow near the bottom of the stairs. *See* Reproduced Record (R.R.) at 244a-46a, 251a. Retaining walls flanked the bottom five or six stairs but not the entire staircase. *Id.* at 252a. Logan's counsel asked the Philadelphia Housing Authority's (Authority) witness questions regarding the fact that the retaining walls appeared to be casting "shade" or a "shadow" on the stairs. *Id.* at 589a-90a, 594a-98a. As the Majority acknowledges, however, Logan testified the photographs did not accurately depict the stairs at the time of his fall:

> [Counsel for Logan:] Does this photograph show the area where you fell?
>
> [Logan:] No, it don't. As a matter of fact, the lighting in that place is - - there is no light like that. I don't know if that's because of the flash or whatever, but that whole area from that first level is dark.
>
> . . . .
>
> [Counsel for the Authority:] And I just want to be clear, in this picture, you said, I think, because of a flash or something when you were there, when you encountered the conditions on the night of the accident, it didn't look like this?
>
> [Logan:] No. That's way too bright. All of that was dark.
>
> [Counsel for the Authority:] In other words, in this picture, you can see, like, the flowers, you can see the grass –
>
> [Logan:] Yeah. No. You couldn't see nothing like that.

[Counsel for the Authority:] -- a dark shadow here?

[Logan:] No. The shadow went all the way up to the top of the steps, even where that flat is and then down. So I had to walk down them steps and then walk to the edge towards the next one to walk all the way down.

[Counsel for the Authority:] So unlike what you see here, in the pictures that were provided, this entire area was much darker?

[Logan:] Much, much darker.

*Id.* at 653a, 671a-72a.

I appreciate the Majority's admonition that we must view the evidence in the light most favorable to Logan. Nevertheless, Logan's own testimony contradicts the Majority's description of his claim. Logan did not attribute his injury to the retaining walls or to any dangers unique to that location but instead testified the entire staircase was dark at the time he fell.[1] Photographs taken under different lighting conditions and questions directed to the Authority's witness, who testified he viewed the stairs under different lighting conditions, cannot overcome Logan's admissions, which at most support the conclusion that he fell because the Authority did not install lighting for the stairs and it was dark outside. *See* R.R. at 589a-92a, 616a-18a.

It is also important to emphasize that the absence of lighting for the stairs does not fall within the real estate exception simply because the Authority chose to install lighting in other portions of the complex where Logan fell. By way of example, case law distinguishes between installing a dangerous guardrail along the highway, which

---

[1] It appears the only statements during Logan's testimony specifically suggesting he fell because there was a dangerous shadow in the area of the retaining walls did not come from Logan but from the Authority's counsel while discussing questions he asked Logan during a prior deposition. *See* R.R. at 676a-79a. As quoted above, Logan's actual description of the staircase at trial contradicted this theory.

falls within the exception, and failing to install a guardrail entirely, which sovereign immunity must bar. *See Doyle v. Muniz-Nieves*, 343 A.3d 361, 366-67 (Pa. Cmwlth. 2025). "Although an additional guardrail may make the highway safer, that does not mean any guardrails or safety features already present on the highway are deficiently arranged or designed so as to bring the claim within the real estate exception." *Id.* at 367. In the same way, the Authority's failure to install lights for the stairs cannot be considered a deficient arrangement or design of lighting it installed elsewhere in the complex.[2]

Accordingly, Logan's testimony establishes only the "absence of a condition," i.e., the "absence of lighting," rather than the presence of a dangerous condition. *See Wise*, 249 A.3d at 518; *Doyle*, 343 A.3d at 367; *Essington v. Monroe Cnty. Transit Auth.*, 302 A.3d 219, 236-38 (Pa. Cmwlth. 2023), *appeal denied*, 312 A.3d 315 (Pa. 2024) (explaining sovereign immunity applies to allegations "that state-owned real estate lacks lighting" or other safety features). I would hold Logan's claim does not fall within the real estate exception, reverse the order of the Court of Common Pleas of Philadelphia County, and remand for entry of judgment in favor of the Authority.[3]

_____
STACY WALLACE, Judge

---

[2] The Majority asserts we should not only focus on the stairs but also on the immediate area where Logan fell. The record establishes there were lights on the back and side of the apartment building but not on the front of the apartment building or in the immediate area where Logan fell other than porch lights. *See* R.R. at 244a-46a, 251a, 607a-14a, 635a. Notably, Logan did not testify whether the porch lights were on or off at the time he fell.

[3] Based on my disposition, I would not reach the issue of whether the damages cap is constitutional.